Group included Defendants Liaoning Jiayi and Haicheng Huayu, and co-conspirators Shenyang Metals & Minerals and CITIC Trading.[10]

54. The members of the two Jiyuan and Huaxia Magnesite Groups collectively represented more than 70 percent of the export volume of magnesite in China.

55. As a result of these agreements, despite slumping demand, the price of magnesite products imported from China to the United States increased during 2000. According to statistics available from the United States International Trade Commission, the customs value of DBM imported from China into the United States rose from $104 per metric ton in the fourth quarter of 1999 to $158 per metric ton by the fourth quarter of 2000.[11]

56. According to the website of CCCMC, the President of the Jiayuan Magnesite Cartel, Shun Shuyuan, also the Chief Executive of Defendant Yingkou Huachen, reported that by mid-2001 the cartel's efforts had been successful and "would give [Chinese companies] 50 million USD of export sales."[12]

57. On February 19, 2001, the Jiyuan and Huaxia Magnesite formally established a single, unified group under the name "Chinese Magnesite Export Association" (the "Cartel"). The unification effort was spearheaded by Defendant Liaoning Jiayi. The Cartel comprised 23 exporting companies, including Defendants Haicheng Pailou, Yingkou Huachen, Xiyang Group, Haicheng Houying and Haicheng Huayu. The Cartel aimed to provide strict management control of all sales, production schedules of individual producers and export prices for Chinese magnesite, including exports to the United States. It set new standard prices that varied based on the purity of the product:

---

[10] "Second Chinese magnesium carbonate export group formed," Royal Society of Chemistry, CHEMICAL BUSINESS NEWSBASE, Aug. 22, 2000 (attached hereto as Exhibit 9).
[11] See USITC Dataweb.
[12] CCCMC Website, June 2001, *"The Nation's Magnesite Self-Regulation Initiatives is [sic] Showing Results"* (attached hereto as Exhibit 10).

14

$140 per ton for magnesite with 95% magnesium oxide, $114 per ton for 90% magnesium oxide, and $160 per ton for 97% magnesium oxide.[13]

58. In 2003, the Cartel announced "floor prices" of magnesite exports, including exports to the United States, that were $10 to $15 per ton higher than the prevailing prices at the end of 2002.[14]

59. Due to internal concerns about the effectiveness of its members' individual and collective efforts, the Cartel conducted several further meetings of Defendants and other exporters. On March 22, 2003, at least 19 exporting companies, including Defendants Liaoning Jiayi, Haicheng Houyin, Yingkou Huacheng, Dailan Golden Sun, China Minmetals, China Minerals, Sinosteel Trading, Xiyang Pacific, and Haicheng Huayu met in Shenyang, China to discuss and forecast the price trend for the year 2003. The members of the Cartel agreed to strengthen self-regulation and cooperation to reduce competition in exports of magnesite. The members also agreed to have the Cartel establish itself under the name the "China Magnesite Forum" and established goals of restraining competition and establishing limits on export supply in order to maintain and increase prices.

60. Operating under the name China Magnesite Forum, the members of the Cartel further agreed that cartel-related disputes would be arbitrated among themselves by their association, the CCCMC. CCCMC is not a governmental organization.[15]

---

[13] "And Then There Was One: China's latest Magnesite Export Group," INDUSTRIAL MINERALS, Aug. 2, 2001 (attached hereto as Exhibit 11); "Chinese Export Association Holds DBM Prices Steady," METAL – PAGES, Aug. 15, 2001 (attached hereto as Exhibit 12); "Magnesite," MINING ANNUAL REVIEW, Oct. 2001 (attached hereto as Exhibit 13).

[14] "New Chinese Export Group Formed Prices Rise," INDUSTRIAL MINERALS, Apr. 1, 2003 (attached hereto as Exhibit 14).

[15] CCCMC Comments; United States International Trade Commission, Investigation No. 731-TA-1022, September 23, 2003 Hearing Transcript (excerpt attached hereto as Exhibit 15).

15

61. CCCMC reported on agreements that Defendants had reached at the March 22 meeting:

> On March 22nd, 19 major enterprises from the Magnesite export industry held a meeting in Shenyang to thoroughly review and analyze the Magnesite export industry . . . . The group agreed that the most important topics of discussion for now and the near future were: to strengthen self-regulation and cooperation in the industry, act against improper competition and uphold normal and orderly export procedures within the established framework of quota tender policy.
>
> After much discussion and exchange of ideas, the group agreed to the immediate setting up of the Magnesite Export Industry Self-Regulating Group in the form of the "China Magnesite Forum." The Forum will accept arbitration and guidance from the China Chamber of Commerce of Metal, Minerals & Chemicals Importers & Exporters.[16]

62. On February 1, 2004, members of the Cartel, including Defendants Sinosteel Trading, Xiyang Group, Haicheng Houying, Haicheng Huayu and Jiachen Group met under yet another name, calling themselves the "China Magnesite Self-Disciplined Association." The goal of this group was to maintain DBM prices in a range between $152 per metric ton for 90.0% magnesium oxide and $210 per metric ton for 97.3% magnesium oxide.[17]

63. Over the weekend of December 9-10, 2006, members of the Cartel, including Defendants Xiyang Group, Haicheng Huaya, Haicheng Houying and Jiachen Group met and agreed to increase prices by $10 per ton for exports of DBM, including exports to the United States. This agreement followed an earlier agreement by members of the Cartel, reached in November 2006, to increase the price of exported DBM, including exports to the United States, by $30 per ton.[18]

---

[16] CCCMC Webpage, "Magnesite Export Industry Self-Regulatory Group – The China Magnesite Forum." (attached hereto as Exhibit 16).

[17] USGS, Magnesium Compounds, 2004 MINERALS YEARBOOK p. 47.2 *available at* http://minerals.usgs.gov/minerals/pubs/commodity/magnesium/magnmyb04.pdf (attached hereto as Exhibit 17); Trends & Developments in Refractory Raw Materials Supply, Industrial Minerals Presentation at Tehran International Conference on Refractories – 3-6 May 2004 *available at* http://www.mineralnet.co.uk/pdfs/697/51_ticr.pdf (attached hereto as Exhibit 18).

[18] USGS, Magnesium Compounds, 2006 MINERALS YEARBOOK p. 46.2, *available at* http://minerals.usgs.gov/minerals/pubs/commodity/magnesium/magnmyb06.pdf (attached hereto as Exhibit 19).

16

64. In February 2007, members of the Cartel met to discuss a possible agreement to increase the export price of dead-burned magnesite, including exports to the United States.[19]

65. Due to the efforts to increase prices at the end of 2003, the Cartel achieved significant price increases in the U.S., stabilized U.S. prices, and avoided major price cutting despite low levels of demand. An overcharge analysis from a regression model by Plaintiffs' expert economist Dr. Russell Lamb of Econ One shows that, between 2000 and 2003, the Cartel overcharged U.S. buyers of magnesite by an average of 4 percent, while between 2004 and 2008, as a direct result of the Cartel's activities, U.S. magnesite purchasers were overcharged more than 21 percent.[20]

66. During the period of the charged combination and conspiracy, Defendants and their co-conspirators have participated in meetings and conversations, in addition to the meetings described above, in which the export prices, production, and markets for magnesite and magnesite products were discussed and agreed upon.

67. At their meetings, Defendants and others agreed to and did eliminate, suppress, and limit competition, by, among other things:

    (a) discussing the production schedules and export prices of magnesite and magnesite products including for the U.S.;

    (b) agreeing to control the supply of magnesite and magnesite products for export to the U.S. and elsewhere;

    (c) agreeing to increase and maintain export prices of magnesite and magnesite products to the U.S. and elsewhere,

---

[19] Mike O'Driscoll, The Turning of the Dragon *available at* http://www.mineralnet.co.uk/pdfs/697/109_sme2007.pdf at p. 14 (attached hereto as Exhibit 20).
[20] Expert Report of Dr. Russell Lamb, dated September 27, 2007, filed in Support of Plaintiffs' Motion for a Default Judgment.

68. Defendants' decision to enter into the *per se* unlawful agreements with each other as competitors, as described above, was and is wholly voluntary, not the result of government action. Neither the CCCMC nor the government of China interferes with the pricing decisions of the associations' members, including those members that are state-owned enterprises; the CCCMC has unequivocally made such representations to the United States Department of Commerce and to the United States International Trade Commission.[21]

69. Defendants have been able to increase prices successfully without maintaining 100 percent control of the market. The Defendant producers have the competitive advantage of lower costs than their competitors.[22] Defendants also have enjoyed a competitive advantage relative to manufacturers in other nations because China has employed a fixed currency exchange rate which undervalues the Yuan, making Chinese exports of magnesite and magnesite products to the United States relatively less expensive compared to exports of magnesite and magnesite products from other nations.

70. Further, as the Cartel has taken steps to restrain production and increase prices, competitors have shown that they would follow price increases rather than undercut the new Cartel price levels.

71. The Cartel established by Defendants and their co-conspirators continues its illegal conduct today.

B. **The Impermissible Effect on Relevant Markets**

72. During the conspiracy, prices of magnesite and magnesite products exported to the United States from China have not followed the laws of supply and demand that exist in a

---

[21] *See* notes 1, 16 *supra*.
[22] CEH, p.91.

18