Robert J. Del Tufo
Shepard Goldfein
Michael L. Weiner
Thomas Pak
Sean M. Tepe
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Times Square
New York, New York 10036-6522
(212) 735-3000

*Attorneys for Defendants China Minmetals*
*Corporation and China National Minerals Co., Ltd.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANIMAL SCIENCE PRODUCTS, INC., et al., | Civil Action No. 05-4376 (GEB/ES) |
| Plaintiffs, |  |
| v. | (Document filed electronically) |
| CHINA NATIONAL METALS & MINERALS IMPORT & EXPORT CORPORATION, et al., |  |
| Defendants. |  |

## REPLY MEMORANDUM IN SUPPORT OF MOTION
## TO DISMISS PLAINTIFFS' FIRST AMENDED
## CLASS ACTION COMPLAINT BY DEFENDANTS
## CHINA MINMETALS CORPORATION AND
## CHINA NATIONAL MINERALS CO., LTD.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

ARGUMENT ...................................................................................... 2

I.     The Allegations of Subject Matter Jurisdiction Are Insufficient ................ 2

       A.     Plaintiffs Have Not Alleged Import Trade or Commerce .................... 2

       B.     Plaintiffs Have Not Alleged "Direct, Substantial and
              Reasonably Foreseeable Effect" ............................................. 3

       C.     There Was No "Substantial Effect" in the U.S. Under
              *Hartford Fire* ...................................................................... 6

II.    The Act of State Doctrine Applies to Plaintiffs' Allegations ....................... 7

       A.     The Quantity and Price of Magnesite Exports Are Regulated
              By the Chinese Government ................................................... 7

       B.     Plaintiffs' Claim Requires Inquiry into the Validity of
              China's Export Quantity and Price Regulations ......................... 9

       C.     Principles of Separation of Powers and Respect for
              Sovereignty Are Directly Implicated in This Suit ..................... 12

III.   International Comity Supports Dismissal of the Amended Complaint ........ 12

IV.    The Pending Motion May Be Decided Without Discovery .......................... 13

CONCLUSION .................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Animal Science Products, Inc. v. China National Metals & Minerals Import & Export Corp.*, 596 F. Supp. 2d 842 (D.N.J. 2008)................*passim*

*Antares Aircraft, L.P. v. Federal Republic of Nigeria,*
999 F.2d 33 (2d Cir. 1993)................................................................. 6

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964)................................ 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................ 2

*Boyd v. AWB Ltd.*, 544 F. Supp. 2d 236 (S.D.N.Y. 2008) ........................................ 5

*Callejo v. Bancomer, S.A.*, 764 F.2d 1101 (5th Cir. 1985) ................................ 10, 11

*In re City of Philadelphia Litigation*, 158 F.3d 711 (3d Cir. 1998)........................ 1

*Commercial Street Express LLC v. Sara Lee Corp.,*
No. 08 C 1179, 2008 WL 5377815 (N.D. Ill. Dec. 18, 2008) ...................... 5

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
370 U.S. 690 (1962)...................................................................... 11

*Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd*, 299 F.3d 281
(4th Cir. 2002)............................................................................ 6

*Drexel Burnham Lambert Group Inc. v. Galadari*, 777 F.2d 877
(2d Cir. 1985) ............................................................................ 14

*Eurim-Pharm GmbH v. Pfizer Inc.*, 593 F. Supp. 1102 (S.D.N.Y. 1984) ................ 5

*Filetech S.A. v. France Telecom S.A.*, 304 F.3d 180 (2d Cir. 2002)........................ 6

*Gould Electronics Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000) ............... 3, 14

*Grupo Protexa, S.A. v. All American Marine Slip*, 954 F.2d 130
(3d Cir. 1992) ............................................................................ 14

*Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993)................... 2, 6, 13

*Jama v. INS*, 22 F. Supp. 2d 353 (D.N.J. 1998) ....................................................... 14

*M.M. Global Services, Inc. v. Dow Chemical Co.*, No. 02-1107,
    2004 U.S. Dist. LEXIS 4139 (D. Conn. Mar. 18, 2004) ................................ 4

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*,
    No. 04-332, 2006 WL 2711527 (D.D.C. Sept. 21, 2006)...................... 11, 12

*Oetjen v. Central Leather Co.*, 246 U.S. 297 (1918) ............................................. 12

*O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.*,
    830 F.2d 449 (2d Cir. 1987)........................................................................ 10

*Trugman-Nash, Inc. v. New Zealand Dairy Board*, 954 F. Supp. 733
    (S.D.N.Y. 1997) .................................................................................... 11, 13

*Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293 (3d Cir. 2002)................. 2

*Underhill v. Hernandez*, 168 U.S. 250 (1897) ....................................................... 12

*United States v. LSL Biotechnologies*, 379 F.3d 672 (9th Cir. 2004) ...................... 4

*United States v. Sisal Sales Corp.*, 274 U.S. 268 (1927) ........................................ 11

*In re Vitamin C Antitrust Litigation*, 584 F. Supp. 2d 546 (E.D.N.Y. 2008).......... 14

*W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*,
    493 U.S. 400 (1990)..................................................................................... 12

## STATUTES

28 U.S.C. § 1605(a)(2) ............................................................................................. 6

## OTHER AUTHORITIES

United States Department of Justice & Federal Trade Commission,
    *Antitrust Enforcement Guidelines for International Operations* (1995) ........ 6

**INTRODUCTION**

In opposing Defendants' motion to dismiss, Plaintiffs offer numerous arguments and exhibits in an attempt to complicate two straightforward issues: (1) whether Plaintiffs have sufficiently alleged subject matter jurisdiction, and (2) if so, whether the allegations implicate the judicially-created doctrines of act of state and comity. China National Minerals Co., Ltd., and its parent company, China Minmetals Corp., (collectively "CNM") respectfully submit that the Amended Complaint fails to heed the Court's detailed instructions on how to replead with regard to both issues, and nothing in their Opposition supports reconsideration of previously decided legal issues.[1] *Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842 (D.N.J. 2008).

First, the Amended Complaint does not allege that CNM directly brought magnesite into the United States, which is required to satisfy the import commerce exception to the FTAIA. Therefore, the FTAIA applies to Plaintiffs' claim, but the allegations of a foreign conspiracy targeting a global market for magnesite fall short of establishing that CNM's activities in China had a "direct, substantial and reasonably foreseeable effect" on U.S. commerce.

---

[1] *See, e.g., In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998) (law of the case acts to preclude reconsideration of legal issues except in "extraordinary circumstances"). Remarkably, Plaintiffs' Opposition does not cite or even mention the Court's prior decision.

1

Second, Plaintiffs fundamentally misconstrue the status and nature of China's magnesite export regulations and CNM's motion to dismiss based on those regulations. During the entire relevant time period, China, acting as a sovereign nation, regulated the amount of magnesite, a natural resource, that may be exported from China, both in the aggregate and by each exporter, and mandated that exporters agree to a uniform, minimum export price. The conduct required by these regulations is the same conduct challenged by Plaintiffs.

## ARGUMENT

## I.    The Allegations of Subject Matter Jurisdiction Are Insufficient.

As Plaintiffs recognize, Opp. at 19 n.7, CNM makes a facial challenge to the Amended Complaint's allegations regarding subject matter jurisdiction, both under the FTAIA and the "substantial effect" test under *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 796 (1993), because the Amended Complaint does not meet the proper pleading threshold set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545-55 (2007), as recognized by this Court in its previous dismissal. *See* 596 F. Supp. 2d at 881.

### A.    Plaintiffs Have Not Alleged Import Trade or Commerce.

The FTAIA applies to Plaintiffs' suit because the Amended Complaint does not allege that CNM acted as importers to "directly" or "actually" bring magnesite into the U.S. *Id.* at 861, 868 (defining the "import trade or import commerce" exclusion from 15 U.S.C. § 6a); *see also Turicentro, S.A. v. Am. Airlines Inc.*, 303

2

F.3d 293, 303 (3d Cir. 2002). Instead, it alleges CNM "sold magnesite products to U.S. companies and shipped magnesite products to the United States." Am. Compl. ("AC") ¶¶ 12, 13. While Plaintiffs are correct that these statements must be taken as true for purposes of this motion, these general allegations of sales or shipments to U.S. companies fall short of meeting the standard articulated by the Third Circuit and adopted by this Court.

To compensate for the Amended Complaint's shortcomings, Plaintiffs ask the Court to consider publicly available import records accompanying their Opposition. Opp. at 6. It would be inappropriate to consider these records in response to CNM's facial challenge. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Nonetheless, those records do not assist Plaintiffs, as they list U.S. companies, not Defendants, as the "importer" of record, and thus confirm that CNM did not "directly" or "actually" bring magnesite into the U.S. *See* Mag. Decl. Exs. 6-7.

B.    Plaintiffs Have Not Alleged "Direct, Substantial and Reasonably Foreseeable Effect."

Plaintiffs concede that the conspiracy they have alleged is global in nature and not directed primarily at the U.S. *See* Opp. at 24. Contrary to Plaintiffs' assertion, CNM does not contend that a worldwide conspiracy may *never* have some effect on U.S. commerce. Rather, CNM contends that whether a plaintiff has pleaded a "direct, substantial and reasonably foreseeable effect" on U.S. commerce,

3

as is required by the FTAIA, depends on and is informed by the allegations of the nature of the conspiracy and intended market.[2]

The Amended Complaint alleges conspiratorial conduct in China by Chinese companies concerning exports of Chinese magnesite to a global magnesite market, of which the U.S. is but a small part.  Alleging that Defendants' global exports "includ[e] exports to the United States," AC ¶¶ 57-58, 63-64, does not make the alleged conspiracy's effect on U.S. commerce any more direct or substantial.  More informative is the Court's previous finding that the U.S. constituted a "small fraction" of worldwide Chinese magnesite exports.  596 F. Supp. 2d at 876 & n.34; *see also* AC Ex. 2 at 92 (indicating only 15% of Chinese exports arrived in U.S. in 2006).  The Court ruled previously that allegations that "prices must have had a direct and substantial effect on the United States market *simply because the prices were rising all over the world*" are insufficient.  596 F. Supp. 2d at 877.[3]  Nonethe-

---

[2]    This distinction was made in the case cited by Plaintiffs.  *See M.M. Global Servs., Inc. v. Dow Chem. Co.*, No. 02-1107, 2004 U.S. Dist. LEXIS 4139, at *17 (D. Conn. Mar. 18, 2004).  Contrary to establishing that alleging a foreign "price-fixing conspiracy caused direct purchasers in the U.S. to pay supra-competitive prices" alone is sufficient "to satisfy the FTAIA effects test," Opp. at 24, that case shows the significance of alleging a conspiracy targeting the U.S., rather than a global, market.  The court upheld the amended complaint because a conspiracy "formed within the United States by United States companies" that records indicated was targeted at maintaining prices in the U.S. "might reasonably cause direct and substantial effects" in the U.S.  2004 U.S. Dist. LEXIS 4139, at *9, *17-18.

[3]    *United States v. LSL Biotechnologies*, 379 F.3d 672, 682 (9th Cir. 2004), held that the existence of a government minimum or floor price on Mexican-

*(cont'd)*

less, Plaintiffs continue to gloss over this deficiency in their allegations by characterizing the alleged 21% overcharge calculated by its expert as one "on U.S. prices" when it is not actually based on U.S. prices.  CNM Br. at 16; Opp. at 27.  In fact, none of the allegations in the Amended Complaint refers to U.S. pricing, and U.S. customs values of Chinese magnesite imports, AC ¶ 55, are irrelevant because the data are not linked to the alleged conspiracy or conspirators.

Finally, although Plaintiffs add more statistics about U.S. magnesite imports, there is nothing that establishes the "clear link between the aim of Defendants' alleged *illegal* activities and *the United States market*."  596 F. Supp. 2d at 870. Thus, the fact that Plaintiffs have alleged a globally targeted conspiracy based on foreign conduct indicates that the conspiracy could not have the necessary direct and substantial effect on U.S. commerce.[4]

---

*(cont'd from previous page)*
exported tomatoes "belie" plaintiff's argument that the complained of restrictive covenant between potential competitors "could raise the prices ultimately paid by American tomato consumers."

[4]    *See Commercial St. Express LLC v. Sara Lee Corp.*, No. 08 C 1179, 2008 WL 5377815, at *3-4 (N.D. Ill. Dec. 18, 2008) (alleged price-fixing in Germany of home care products sold worldwide was insufficient connection to alleged U.S. price increases); *Boyd v. AWB Ltd.*, 544 F. Supp. 2d 236, 246 (S.D.N.Y. 2008) (alleged foreign manipulation of wheat supply failed to demonstrate "direct" effect on U.S. commerce); *Eurim-Pharm GmbH v. Pfizer Inc.*, 593 F. Supp. 1102, 1106-07 (S.D.N.Y. 1984) (alleged worldwide price-fixing scheme conducted from Europe failed to establish "a causal connection between defendants' conduct in Europe and the [alleged] price increase in the United States").

C.    There Was No "Substantial Effect" in the U.S. Under *Hartford Fire.*

Under *Hartford Fire*, the Sherman Act's reach extends only to "foreign con-

duct that was meant to produce and did in fact produce some substantial effect in

the United States."  509 U.S. at 796.  Plaintiffs' allegations fail to satisfy this test

for the same reasons they do not satisfy the FTAIA.[5]  In that respect, the reasoning

of *Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd*, 299 F.3d 281 (4th Cir. 2002), a

case with similar facts to those alleged by Plaintiffs, is illustrative.  While Plaintiffs

are correct that the court in *Dee-K* decided the legal issue of whether the *Hartford*

*Fire* substantial effect test should have applied, it also affirmed the district court's

judgment that the jury's finding of no substantial effect was not against the weight

of the evidence.  *Id.* at 285 & n.1.[6]

---

[5]    Plaintiffs misleadingly cite the U.S. Department of Justice's *Antitrust En-*
*forcement Guidelines for International Operations* ("*Guidelines*"), which do not
state that "claims . . . alleging the direct sale of price-fixed goods to U.S. compa-
nies 'almost invariably' satisfy *Hartford Fire*'s substantial effects test," Opp. at 31,
but instead note that a sufficient allegation of import commerce "almost invariably
satisf[ies] the *intent part* of the *Hartford Fire* test."  *Guidelines* § 3.11 (emphasis
added), *available at* http://www.usdoj.gov/atr/public/guidelines/internat.htm.   The
*Guidelines* continue, "[w]hether they in fact produce the requisite substantial ef-
fects will depend on the facts of each case."  *Id.*

[6]    As Plaintiffs concede, China Minmetals Corp. is state-owned, and it is
thereby "cloaked with presumptive sovereign immunity" under the Foreign Sover-
eign Immunities Act. *Filetech S.A. v. Fr. Telecom S.A.*, 304 F.3d 180, 181 (2d Cir.
2002).  However, because Plaintiffs allege a foreign conspiracy directed at a global
market, they have not alleged commercial activity "carried on in the United
States." 28 U.S.C. § 1605(a)(2).  Furthermore, the foreign conduct did not cause a
"direct effect" in the U.S.  *Id.*; *see also Antares Aircraft, L.P. v. Fed. Republic of*
*(cont'd)*

## II.    The Act of State Doctrine Applies to Plaintiffs' Allegations.

### A.    <u>The Quantity and Price of Magnesite Exports Are Regulated by the Chinese Government.</u>

Confronted with CNM's detailed explanation of how China exercises unique control over magnesite exports, Plaintiffs first try to characterize China as a market economy wherein its industrial enterprises act independently and are not subject to price controls.  Opp. at 9-10.  None of these statements or cited sources pertains to magnesite or China's export licensing system and all are therefore irrelevant.[7] Plaintiffs then spend pages trying to argue that many of the regulations cited by Defendants are outdated, repealed or inapplicable to magnesite.  Opp. at 2, 11-14, 38-40.  This is simply incorrect:

- All of the regulations cited by Defendants were in effect and applicable to magnesite at some time from September 2001 to the present, which is the alleged relevant time period.  The Catalogue of Goods

---

*(cont'd from previous page)*

*Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993) ("[T]he fact that an American individual or firm suffers some financial loss from a foreign tort cannot, standing alone, suffice to trigger the exception.").

[7]    The statements in which China represents itself as a market economy occur in the context of trying to avoid being designated as a "non-market economy" or NME by the U.S. government in evaluating anti-dumping petitions.  Companies in a designated "non-market economy" are subject to a different methodology for calculating dumping duties and thus face higher duties than companies in market economies.  *See* Pak Sec. Decl. Ex. A (GAO Report, *U.S.-China Trade: Eliminating Nonmarket Economy Methodology Would Lower Antidumping Duties for Some Chinese Companies* (2006)), at 8-13.  Besides being unsuccessful – the U.S. government has always designated China as an NME since 1981 – such statements do not speak to magnesite or the export regulations at issue in this case.

Subject to Export License Management lists all of the commodities subject to the export quota and licensing system. *See* Pak Sec. Decl. Exs. B (2000-2009 Catalogues) (listing magnesite), C (previously submitted as Li Decl. Ex. 7). While some of the export price regulations have been repealed and replaced, at all times during the relevant period exporters were in fact subject to uniform, minimum export price requirements.[8]

- Plaintiffs concede that magnesite exporters are subject to a government-mandated export quota. Opp. at 14, 51. The quota caps the aggregate amount of magnesite that may be exported from China in a given year and sets the amount an individual exporter may export. *See* CNM Br. at 6-8.

The existence and relevance of these regulations are confirmed by the recent *Request for Consultations by the United States* (the "*Request*") with China through the World Trade Organization, which challenges China's export restrictions on numerous commodities. Pak Sec. Decl. Ex. D. Although magnesite is not one of the commodities listed in the *Request*, coke is one of the listed commodities and, as Plaintiffs themselves point out, is "subject to the same export licensing regulations cited by Defendants." Opp. at 14. These regulations include "quantitative restrictions" on exports, as well as "a minimum export price system . . . [that] requires

---

[8] To clarify the confusion that may have been sown by Plaintiffs, the requirement that exporters abide by a uniform, minimum export price coordinated within the CCCMC are set forth in the regulations referenced in the Li Decl. Ex. 10, Art. 16 (effective through Jan. 1, 2002); Ex. 19, Art. 16 (through Jan. 1, 2005); Ex. 16, Art. 8.6 (through Sept. 7, 2007); Ex. 14, Art. 32.3; and Ex. 23, Part I.2. Furthermore, many of the other regulations cited by Defendants provide the context in which both the quota and minimum pricing are implemented, namely through a comprehensive bidding process accompanied by other adjustments to price via export fees, duties, and rebates. *See* CNM Br. at 3-10.

the examination and approval of export contracts and export prices . . . [that is administered] through [China's] ministries and other organizations under the State Council as well as chambers of commerce."[9]  Pak Sec. Decl. Ex. D (*Request*). Many of the regulations cited by Defendants appear on the *Request*'s non-exclusive list of "measures through which China imposes these restraints on exports." *Compare id. with* Li Decl. Exs. 2, 8, 12, 18, 20, 21, 25 *and* Mag. Decl. Ex. 23.  Accordingly, Plaintiffs' arguments regarding the inapplicability or irrelevance of these regulations to magnesite exports are completely unfounded.

B.  <u>Plaintiffs' Claim Requires Inquiry into the Validity of China's Export Quantity and Price Regulations.</u>

Plaintiffs' alternative argument that their claim is not intended to challenge or to require an inquiry into the validity of the export regulations, Opp. at 36-46, is not dispositive.  Rather, the Court should make an independent, informed judgment

---

[9]  Indeed, it is the position of the U.S. government that Chinese chambers of commerce, such as the CCCMC, administer China's export policies.  Contrary to Plaintiffs' suggestion, CNM does not argue that CCCMC is itself a division of the Chinese government.  It is, however, a unique organization with no parallel in the United States, *see* CNM Br. at 4-6, and thus is a *de facto* instrument of the Chinese government.  This is not contradicted by the European Court of First Instance ruling cited by Plaintiffs.  *See* Opp. at 3, 41-42.  That court had before it the unrelated issue of whether the European Commission applied the proper measure of "normal value" in computing an anti-dumping duty on a single producer of glyphosate.  *See* Mag. Decl. Ex. 1.  The court based its finding about the nature of the CCCMC on *only* a CCCMC brochure.  *Id.* ¶ 153.  And the court's finding regarding glyphosate pricing decisions was based on submissions from the producer, *unchallenged* by the Commission.  *Id.* ¶¶ 141-42, 153.  Moreover, there is no discussion by the court of *any* of the quota and pricing regulations cited by Defendants.

9

on what would be entailed in adjudicating the claim. *See O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.*, 830 F.2d 449, 452 (2d Cir. 1987); *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1113, 1116 (5th Cir. 1985).

Plaintiffs were warned that "any challenge to the Chinese government's de-cisions as to exportation quotas clearly implicates . . . judicially-create[d] doctrine or public policy related to a foreign sovereign's action." 596 F. Supp. 2d at 869 n.23. And yet, Plaintiffs' claim is still based, in part, on restrictions in magnesite production and supply, AC ¶¶ 66-67, which as Plaintiffs concede, is subject to Chinese law mandating Defendants' compliance with restrictions on export quanti-ties. Plaintiffs have not disputed that the export quotas impact price and thus would be central to any injury causation analysis. Plaintiffs also do not dispute that the yearly aggregate quota and the individual exporter allocation of that quota inhibit an exporter's ability to compete on price so as to increase market share or to drive up price by withholding supply (because unused supply counts against the exporter in the following year's quota allocation).

Plaintiffs' claim is also based on price restraints. AC ¶¶ 2, 67, 75. Chinese law mandates that Defendants agree to a uniform minimum export price through the coordination of the CCCMC. *See* CNM Br. at 8. Plaintiffs' repeated denials of challenging the validity of the minimum export price regulations, *see* Opp. at 38, is belied by their reference to a CCCMC meeting at which the government-required

minimum export price was set as "another meeting" of the alleged conspiracy, *id.* at 4. Plaintiffs also do not contest CNM's previous examples of how Plaintiffs' allegations concerning the five magnesite trade associations are intertwined with the export regulations, CNM Br. at 19-20, and inclusion of the minimum price meeting is just further proof of the intertwined nature of Plaintiffs' claim.

Given that Plaintiffs challenge the same type of conduct that is required by the export regulations, and, in fact, seek an extraterritorial injunction, the Court cannot avoid an inquiry into the validity of those regulations.[10] As here, where a plaintiff's claim would potentially require a defendant to disregard the regulations of a foreign sovereign, invocation of the act of state doctrine is appropriate.[11]

---

[10]    The cases cited by Plaintiffs for the proposition that act of state is inapplicable when the sovereign's act only aids or facilitates an antitrust conspiracy, Opp. at 37, 39, are inapposite as they related to alleged conspiracies entered into in the U.S. by U.S. citizens that sought to monopolize trade in the U.S. and did not require passing judgment on a foreign sovereign's acts. *See United States v. Sisal Sales Corp.*, 274 U.S. 268, 276 (1927); *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 705-06 (1962).

[11]    *See Callejo*, 764 F.2d at 1116 (breach of contract suit that might force defendant bank to disregard Mexico's exchange control regulations was properly dismissed); *Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-332, 2006 WL 2711527, at *7 & n.18 (D.D.C. Sept. 21, 2006) ("[P]laintiffs' claims are premised on the [defendant] undoing or disregarding an official directive mandated by [government]"); *Trugman-Nash, Inc. v. N.Z. Dairy Bd.*, 954 F. Supp. 733, 736 (S.D.N.Y. 1997) (dismissing suit that would have required defendant to disregard statutory mandates disapproving of sales price competition).

C.   Principles of Separation of Powers and Respect for Sovereignty
     Are Directly Implicated in This Suit.

Plaintiffs' argument that separation of powers concerns are "not implicated"

unless a foreign sovereign's act "would have to be declared invalid" fundamentally

misunderstands the doctrine.  Opp. at 46 (emphasis omitted).  Plaintiffs cite *W.S.*

*Kirkpatrick & Co. v. Environmental Tectonics Corp.*, 493 U.S. 400 (1990), for this

proposition, but *Kirkpatrick* in no way overturned over a century of Supreme Court

precedent respecting the power of the executive over foreign relations, as sug-

gested by Plaintiffs.  *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 421

(1964) (recognizing that "notions of sovereign authority do bear upon the wisdom

of employing the act of state doctrine"); *Oetjen v. Cent. Leather Co.*, 246 U.S. 297,

302-03 (1918); *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897).  Indeed, the act

of state doctrine repeatedly has been applied to dismiss actions, against public and

private defendants, inquiring into the validity of government policies and actions

regarding export control and natural resources.  *See* CNM Br. at 25-26 & n.15 (cit-

ing cases); *see also Oceanic Exploration*, 2006 WL 2711527, at *8.

## III.   International Comity Supports Dismissal of the Amended Complaint.

Plaintiffs argue Defendants failed to identify a "true conflict" between U.S.

and Chinese law, which they contend is necessary to invoke the doctrine of inter-

national comity.  Opp. at 52.  Regardless of whether a finding of "conflict" is a

necessary threshold – conflict is one of the many factors in the Third Circuit's

*Mannington Mills* comity balancing test – Plaintiffs' argument is incorrect. *See* CNM Br. at 28. There are clear conflicts between the Sherman Act's prohibition of volume and price restraints and China's magnesite export quota system and minimum uniform export price. *See supra* p. 8. For example, the Sherman Act is wholly inconsistent with Chinese export regulations that Plaintiffs allege "enforce agreements among members of a chamber of commerce regarding minimum export prices." Opp. at 39. Therefore, unlike in *Hartford Fire*, Defendants cannot comply with both laws.[12] *See* 509 U.S. at 799.

Furthermore, CNM respectfully maintains that an evaluation of the *Mannington Mills* factors weighs decidedly in favor of Defendants. *Compare* CNM Br. at 28-29 *with* Opp. at 52-53. In particular, the respect for sovereignty, which the Court noted animates the doctrine of comity, is significantly implicated in this suit, 596 F. Supp. 2d at 863 n.17, as is Plaintiffs' request for an extraterritorial injunction seeking substantially to affect a regulatory scheme applicable to China's global magnesite exports, not just exports to the U.S.

## IV.   The Pending Motion May Be Decided Without Discovery.

Plaintiffs also seek leave to take discovery ostensibly to gather facts related to subject matter jurisdiction and the so-called abstention doctrines. With respect

---

[12]   For the same reason, application of the foreign sovereign compulsion doctrine would also be appropriate. *See Trugman-Nash*, 954 F. Supp. at 736.

to the former, Plaintiffs are not entitled to discovery against CNM because CNM has, as Plaintiffs noted, made a facial challenge. Opp. at 17. Therefore, the well-pleaded allegations in the Amended Complaint are taken as true and there are no "controverted" facts in need of exploration. *See, e.g.*, *Gould Elecs.*, 220 F.3d at 177; *Jama v. INS*, 22 F. Supp. 2d 353, 360 (D.N.J. 1998).

Likewise, Plaintiffs are not entitled to discovery against CNM relating to the defenses of act of state, comity, or foreign sovereign compulsion. Plaintiffs' case law holds discovery may be appropriate, in the Court's discretion, when there are *factual* issues in dispute. *See, e.g.*, *Drexel Burnham Lambert Group v. Galadari*, 777 F.2d 877, 881 (2d Cir. 1985) (further inquiry warranted "when there are disputed issues of material fact"). Yet nowhere do Plaintiffs state what factual issues are in dispute with regard to CNM's motion. Regardless, discovery is unnecessary because CNM's act of state and comity defenses rest on Chinese export regulations, which are unquestionably acts of state. *Cf. Grupo Protexa, S.A. v. All Am. Marine Slip*, 954 F.2d 130, 139 (3d Cir. 1992) (remanding on unsettled preliminary question of whether Captain's order was act of state directing removal of shipwreck).[13]

---

[13]    Plaintiffs' citation to *In re Vitamin C Antitrust Litigation*, 584 F. Supp. 2d 546 (E.D.N.Y. 2008), is unavailing because the court there focused on the foreign sovereign compulsion doctrine rather than act of state or comity, and because the regulatory regime at issue, called "verification and chop," is unrelated to the export quota, licensing, and minimum price regulations central to this case.

14

Finally, discovery at this time is inconsistent with the Court's roadmap, which sets forth other dispositive motions that may be raised in the future and could be decided without discovery.  596 F. Supp. 2d at 881-82.  Discovery now under the Federal Rules of Civil Procedure – subjecting CNM to the burdens of transnational discovery, foreign language translation, etc. – would defeat one of the benefits of any subsequent arbitration (*e.g.*, limited discovery).

## CONCLUSION

For the reasons set forth in the Memorandum in support of their Motion to Dismiss as well as this Reply Memorandum, the CNM Defendants respectfully submit that the First Amended Class Action Complaint should be dismissed with prejudice.

Respectfully submitted,

By:   /s/  Shepard Goldfein
Robert J. Del Tufo
Shepard Goldfein
Michael L. Weiner
Thomas Pak
Sean M. Tepe
SKADDEN, ARPS, SLATE,
     MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone:  (212) 735-3000

*Attorneys for Defendants China Minmetals Corporation and China National Minerals Co., Ltd.*

15