Donald A. Robinson
Leda Dunn Wettre
**Robinson, Wettre & Miller LLC**
Attorneys at Law
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400

Nicholas L. Coch
Jonathan S. Caplan
Timothy J. Helwick
Mark A. Baghdassarian
**Kramer Levin Naftalis & Frankel LLP**
1177 Avenue of the Americas
New York, New York  10036
(212) 715-9100
*Attorneys for Defendants*
*Sinosteel Corporation, Sinosteel Trading Company and*
*Liaoning Jiayi Metals & Minerals Co., Ltd*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANIMAL SCIENCE PRODUCTS, INC., et al., | |
| Plaintiffs, | |
| | Civil Action No. 05-4376 (GEB/ES) |
| v. | |
| CHINA NATIONAL METALS & MINERALS IMPORT & EXPORT CORPORATION, et al., | (Document filed electronically) |
| Defendants. | |

**REPLY MEMORANDUM OF DEFENDANTS SINOSTEEL CORPORATION,
SINOSTEEL TRADING COMPANY AND LIAONING JIAYI METALS &
MINERALS CO., LTD. IN SUPPORT OF THEIR MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER
JURISDICTION AND/OR ON GROUNDS OF ABSTENTION**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT ..................................................................................................3

I.   The Amended Complaint Is Barred By The FTAIA ........................................3

    A.   The Sinosteel/Jiayi Defendants Are Not  Involved In
    Import Trade Or Commerce....................................................................3

        1.   Plaintiffs' "Public Records" Confirm That
        Defendants Are Not Importers...................................................4

        2.   The FTAIA Applies Regardless Of Whether
        Plaintiffs Are Importers .........................................................5

        3.   Defendants' Declarations Are Consistent  With No
        Import Trade or Commerce .......................................................6

        4.   The F.O.B. Terms of Trade Further Confirm That
        Defendants  Are Not Engaged in Import Trade In
        The United States ...................................................................6

    B.   There Is No Evidence Of A Direct, Substantial, And
    Reasonably Foreseeable Effect On U.S. Import Commerce.................................7

        1.   The FTAIA's Direct Effects Test Applies.................................7

        2.   At Most, Plaintiffs Suggest An Indirect, Spillover
        Effect..................................................................................7

        3.   Plaintiffs Must Rely On Their Own Erroneous
        Assumptions To Concoct An Effect On U.S.
        Commerce .............................................................................9

        4.   Plaintiffs Are Unable To Explain  Inconsistencies
        And Errors In Their Allegations ...............................................10

    C.   Defendants' Foreign Conduct Does Not Have An Anti-
    competitive  Effect On Domestic Commerce Giving Rise
    To A Sherman Act Claim ......................................................................12

    D.   The FSIA Bars Jurisdiction Over Chinese State-Owned
    Sinosteel............................................................................................13

i

**TABLE OF CONTENTS**
(continued)

Page

II.   The Abstention Doctrines Require Dismissal Of The Amended
      Complaint....................................................................................................................13

      A.      The Chinese Government Mandates Price Coordination for
              Natural Mineral Resources Including Processed Magnesite ................................13

      B.      The Act of State Doctrine Applies.......................................................................16

      C.      Principles of Comity Favor Abstention ...............................................................17

III.  Plaintiffs Are Not Entitled To Discovery ........................................................................18

      CONCLUSION.........................................................................................................................19

KL3 2745902.1

# TABLE OF AUTHORITIES

## CASES

*Animal Science Prods., Inc. v. China National*
  *Metals & Minerals Import & Export Corp.*,
  596 F.Supp.2d (D.N.J. 2008)...................................................................... 4, 6, 12 n.9, 20

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)..........................................................................................12

*Boyd v. AWB Ltd.*,
  544 F.Supp.2d 236 (S.D.N.Y. 2008) ......................................................................8

*Commercial St. Express LLC v. Sara Lee Corp.*,
  No. 08 C 1179, 2008 U.S. Dist. LEXIS 102298 (N.D. Ill. Dec. 18, 2008)..................8, 9

*Carpet  Group Int'l v. Oriental Rug Imps. Ass'n.*,
  227 F.3d 62 (3d Cir. 200) ...................................................... 5, 7 n.6, 8, 9 n.8

*Carter Carburetor Corp. v. FTC*,
  No. 434, 1940 U.S. App. LEXIS 4415 (8th Cir. June 3, 1940) .......................................7

*Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*,
  299 F.3d 281 (4th Cir. 2002) .................................................................................13

*Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*,
  241 F.3d 420 (5th Cir. 2001) ..................................................................................9

*Eurim-Pharm GmbH. v. Pfizer Inc.*,
  593 F. Supp. 1102 (S.D.N.Y. 1984) ........................................................................8

*In re Vitamin C Antitrust Litigation*,
  584 F. Supp.2d 546 (E.D.N.Y. 2008)......................................................................16

*Kruman v. Christie's Int'l PLC*,
  284 F.3d 384 (2d Cir. 2002) ...................................................................................5

*M.M. Global Services, Inc. v. The Dow Chemical Co.*,
  No. 3:02 cv 1107, 2004 U.S. Dist. LEXIS 4139 (D. Conn. Mar. 18, 2004)....................9

*McGoldrick v. Berwind-White Coal Mining Co.*,
  309 U.S. 33 (1940)................................................................................................7

*Turicentro, S.A. v. America Airlines Inc*,
  303 F.3d 293 (3d Cir. 200) ...............................................................................4, 5

*United States v. Sisal Sales Corp.*,
  274 U.S. 268 (1927)............................................................................... 19 n.14

*United States v. Watchmakers of Switzerland,*
  No. 96-170, 1962 U.S. LEXIS 5816 (S.D.N.Y. Dec., 20, 1962) .......................... 17 n.11

*W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l,*
  493 U.S. 400 ..............................................................................................17

## LEGISLATIVE HISTORY

H.R. Rep. 97-686, 97th Cong., (2nd Sess.1982),
  *reprinted in* 1982 U.S.C.C.A.N. 2487 ..............................................................2

KL3 2745902.1

Defendants Sinosteel Corporation ("Sinosteel"), Sinosteel Trading Company ("Sinosteel Trading"), and Liaoning Jiayi Metals & Minerals Co., Ltd. ("Jiayi") (collectively, the "Sinosteel/Jiayi Defendants"), respectfully submit this reply memorandum in support of their motion to dismiss the First Amended Complaint ("Amended Complaint" or "AC") for lack of subject matter jurisdiction or, alternatively, on grounds of abstention.[1]

## PRELIMINARY STATEMENT

Plaintiffs' opposition is fundamentally flawed for several reasons.  First, Plaintiffs do not, and cannot, demonstrate that the Sinosteel/Jiayi Defendants are importers and, as a result, the FTAIA properly bars Plaintiffs' claims.  Second, Plaintiffs provide no "evidentiary proof" – as directed by the Court – of any "direct, substantial, and reasonably foreseeable effect" on U.S. commerce required to avoid the FTAIA bar.  Third, Plaintiffs still do not provide any evidence to substantiate their claims that Defendants fixed the price of magnesite for sale to U.S. companies beyond the price coordination required by the Chinese government (not even a single trade ticket).  In fact, Plaintiffs neither allege nor argue that any purported magnesite meetings specifically discussed the U.S. market.  With no proof to proffer, Plaintiffs quarrel with various technical details surrounding Defendants' arguments while side-stepping these key points.

Plaintiffs continue to rely on debunked allegations from the Amended Complaint and simply point to public import "data" pulled off Lexis® and the website of the United States International Trade Commission ("USITC").  The Lexis® data confirms, on its face, that the Sinosteel/Jiayi Defendants are not "importers" of magnesite into the U.S. and,

---

[1] References herein to "Opp. __" are to "Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss Plaintiffs [sic] First Amended Complaint," and to internal page numbers therein, which is docketed as D.I. 105-2.

when scrutinized, the USITC data reveals that prices were anything but "fixed" during the relevant period – they actually fluctuated constantly.

Like Defendants' sales contracts, these Lexis® records show that the Sinosteel/Jiayi Defendants sold magnesite *in China* to various importers, including the international broker (Possehl) from which Plaintiffs allegedly bought their assignment, who in turn brought the magnesite into various countries around the world, including the U.S. Under well-established law and the Court's prior ruling, this activity does not make the Sinosteel/Jiayi Defendants "importers" or involved in import trade outside the reach of the FTAIA. Nor does the mere fact that some U.S. entities buy Chinese magnesite provide evidence of the direct and substantial effect required to trigger exclusion from the FTAIA.

Plaintiffs also feign concern that extending the Court's prior ruling and applying the FTAIA would "jeopardize numerous ongoing prosecutions and investigations of the Department of Justice, as well as private damages actions, against international cartels exporting products into U.S. Commerce" (Opp. 2). In fact, Congress specifically adopted the effects test in the FTAIA to balance the concern for over-extending the antitrust laws to foreign trade in precisely the sort of situation present here, H.R. Rep. 97-686, at *9 – 12, 97th Cong., (2nd Sess. 1982), *reprinted in* 1982 U.S.C.C.A.N. 2487, at *2492-97, a principle similarly recognized by the Department of Justice ("DOJ") Antitrust Enforcement Guidelines for International Operations (the "Guidelines"), §3.121, Illus. C, Var.(1) at 13 (wholly foreign sales activities not subject to U.S. anti-trust laws absent express agreement directed to the U.S.).

The doctrines of act of state, foreign compulsion and international comity also require dismissal of the Amended Complaint. Defendants have put forth in multiple

affidavits overwhelming evidence showing that the Chinese government has (1) imposed export quota limitations, (2) mandated coordination of export prices, and (3) levied severe penalties, including losing the right to export, for non-compliance.  (*See, e.g.,* D.I. 35-14, 35-16, 35-38).  In response, Plaintiffs provide no competing affidavits yet nonetheless argue that various regulations were "abolished" at various times, also ignoring the fact that updated regulations were enacted.  Because there is no allegation or evidence that Defendants did anything more than what they were required to do under the Chinese regulatory scheme for selling Processed Magnesite for worldwide export, the Court should abstain from exercising jurisdiction over the Amended Complaint under these well-established abstention doctrines.

## ARGUMENT

### I.    The Amended Complaint Is Barred By The FTAIA

#### A.    The Sinosteel/Jiayi Defendants Are Not Involved In Import Trade Or Commerce

Plaintiffs seek to avoid the FTAIA on the theory that Defendants "directly sold magnesite to U.S. customers for delivery in the United States during the relevant time period." (Opp. 5, citing AC ¶¶ 12, 13, 19 and 20).[2]  Clever linguistics aside, Plaintiffs fail to establish that Defendants import into the U.S.  As shown below, their "proof" actually shows *others* were importers for the sales alleged to be actionable.  The mere fact that Defendants sell magnesite in China to purchasers, including brokers and others who import

---

[2] Most of Plaintiffs' "Statement of Facts" (Opp. 4 – 16) do not warrant a reply insofar as it merely reiterates allegations in the Amended Complaint, which Defendants addressed allegation-by-allegation in their opening brief.

to the U.S., does not make Defendants themselves engaged in import trade and commerce *in the U.S.* – a point already made clear by this Court. Opinion, 596 F. Supp.2d at 861.

1.      **Plaintiffs' "Public Records" Confirm
        <u>That Defendants Are Not Importers</u>**

Plaintiffs point to a Lexis® printout of import data as purported evidence of import trade and commerce, but they have it backwards.  These public records report transactions in which Jiayi and Sinosteel Trading are identified as "Exporter[s]" of Processed Magnesite, which was sold to an "Importer" – including Possehl, the broker from which Plaintiffs purchased their assignment. (*See* D.I. 105-3, Magnanini Decl., Exhs. 5, 8 (D.I. 105-8, 11)).  <u>None</u> of these exhibits identifies the Sinosteel/Jiayi Defendants as *importers*.  The records also show a port of "Origination" in China and a port of "Destination" in the U.S.  *Id.*  Plaintiffs' newly-cited "evidence" thus undermines their own arguments by confirming exactly what the Sinosteel/Jiayi Defendants have been saying all along – they sell magnesite in China and are not importers to the U.S.  (D.I. 98-2 at 12).

As the Court previously found, such activity does *not* meet the requirements of import trade under the FTAIA.  *See* Opinion, 596 F. Supp. 2d at 861; *see also Turicentro, S.A. v. Am. Airlines Inc*, 303 F.3d 293, 303 (3d Cir. 2000) (finding no "importer" status when "Defendants did not directly bring items or services into the United States") (internal citations omitted).  Plaintiffs purport to distinguish *Turicentro* on the ground that it involved "claims brought by *foreign* travel agents." (Opp. 18).  However, the Third Circuit already dismissed this theory and specifically ruled that "[w]hether plaintiffs are United States citizens is *irrelevant* to our inquiry."  *Id.* at 301 n.5 (emphasis added).  This makes sense as to hold otherwise would render every foreign company involved in the sale of products for

4

worldwide export – *e.g.*, French wine or Chinese tea – also engaged in import trade even though it imported nothing into the U.S.

The Second Circuit's decision in *Kruman v. Christie's Int'l PLC,* 284 F.3d 384, 398 (2d Cir. 2002), cited affirmatively by Plaintiffs (Opp. 18-19), also undermines their argument.  *Kruman* involved alleged price fixing of commissions on the sale of goods at foreign auctions.  The fact that some goods purchased abroad "ultimately have been imported by individuals in the United States" was held *insufficient* to remove the FTAIA's bar on applying the Sherman Act to defendants' foreign conduct.  *Id*. at 396.  That is identical to what Plaintiffs allege here – that defendants in China fixed prices of magnesite exported worldwide, some of which ended up imported to the United States.  Accordingly, the same application of the FTAIA bar applies here as well.

### 2.    The FTAIA Applies Regardless Of Whether *Plaintiffs* Are Importers

Relying on *dictum* in three district court cases outside the Third Circuit, Plaintiffs erroneously contend that "Courts have uniformly concluded that the FTAIA exception for conduct involving import trade applies to claims by domestic importers arising from direct purchases."  (Opp. 18).  None of the cases cited by Plaintiffs actually involved a claim brought by a U.S. importer.  More importantly, the Third Circuit has made clear that "[t]he dispositive inquiry is whether the conduct of defendants, *not plaintiffs*, involves 'import trade or commerce.'"  *Turicentro*, 303 F.3d at 303, citing *Carpet Group Int'l v. Oriental Rug Imps. Ass'n*, 227 F.3d 62, 71-72 (3d Cir. 2000) (emphasis added).  Nothing raised by Plaintiffs' opposition stands for the proposition that the mere fact that some Chinese magnesite sold for export is purchased by U.S. entities and ends up in the U.S. removes the FTAIA bar.

### 3. Defendants' Declarations Are Consistent With No Import Trade Or Commerce

Plaintiffs quibble with the accuracy of certain statements made in the declarations of Feng Ba and Sijie Zhao. (Opp. 6-7). While the Sinosteel/Jiayi Defendants stand by their prior statements, Plaintiffs' challenges are irrelevant. The Sinosteel/Jiayi Defendants are "not involved in the delivery of the magnesite to the final location" and Plaintiffs do not dispute this point. (*See* Opp. at 6 (not disputing this statement)). Under the Court's prior ruling and well-established law, the Sinosteel/Jiayi Defendants therefore are not engaged in import trade in the United States and, hence, the FTAIA applies.[3]

### 4. The F.O.B. Terms Of Trade Further Confirm That Defendants Are Not Engaged In Import Trade In The United States

Plaintiffs mischaracterize Defendants as having argued that they "do not *export* magnesite to the United States or anywhere because the terms of their sales are 'F.O.B.' China." (Opp. 19 (emphasis added)). Defendants do not dispute that they sell in China magnesite for worldwide export, including to the United States. This is *precisely* the type of foreign trade and commerce over which the FTAIA *removes jurisdiction* absent the requisite direct effect, which does not exist here.

Plaintiffs also miss the point by citing to cases standing for the basic proposition that a court may have jurisdiction over "interstate" commerce, including in situations where products are shipped F.O.B. in a single state. (Opp. 19 – 21). The analogous inquiry raised in this case is whether Defendants are engaged in international –

---

[3] For example, the fact that the contracts specify a port of destination does not mean that Defendants are aware of the "ultimate location" where magnesite is actually used. Likewise, simply because some U.S. end-users purchase magnesite in China does not mean that Defendants import magnesite to the U.S.

*i.e.*, foreign – trade, which is undisputed.  Nothing in the cases cited by Plaintiffs changes the fact that the Sinosteel/Jiayi Defendants are engaged in foreign commerce but are not U.S. "importers" or engaged in import trade or commerce.

### B.     There Is No Evidence Of A Direct, Substantial, And Reasonably Foreseeable Effect On U.S. Import Commerce

#### 1.     The FTAIA's Direct Effects Test Applies

Plaintiffs' argument that the FTAIA's effects test is "inapplicable" (Opp. 22) is controverted by well-established case law.  As explained in Defendants' opening brief, *wholly-foreign* activities involving *non-import* trade is outside the reach of the Sherman Act unless "(1) the alleged conduct has a 'direct, substantial and reasonably foreseeable effect' on 'American domestic, import, or (certain) export commerce;' and (2) the effect is 'of a kind that antitrust law considers harmful, *i.e.*, the effect must give rise to a Sherman Act claim.'"  *Boyd v. AWB Ltd.*, 544 F. Supp. 2d 236, 243 (S.D.N.Y. 2008); *see also See Carpet Group Int'l.*, 227 F.3d at 72 (distinguishing conduct "relating to" from conduct "involving" import trade).  Neither exception applies here.

#### 2.     At Most, Plaintiffs Suggest An Indirect, Spillover Effect

Plaintiffs simplistically argue that the sale of price-fixed products to U.S. companies necessarily has an effect on U.S. commerce, even if incidental to foreign commerce.  (Opp. 24).  Rhetoric aside, Plaintiffs miss the key point – they must allege more than a generic "but for" effect to constitute the "kind of 'direct' effect on domestic commerce that could give rise to an antitrust claim within the jurisdictional reach of the Sherman Act."  *See Boyd*, 544 F. Supp. 2d at 246 ("'but for' causation is not the type of direct causation contemplated by the FTAIA"); *Eurim-Pharm GmbH. v. Pfizer Inc.*, 593 F. Supp. 1102, 1104-07 (S.D.N.Y. 1984) (spillover effect in the United States in form of

7

inflated prices for the same product was insufficient to constitute direct, substantial, and reasonably foreseeable effect on the domestic market).

Plaintiffs do not dispute that the U.S receives only 15% of China's magnesite exports, using Plaintiffs' own sources – plainly demonstrating that any pricing effect in the U.S. is spillover from the other 85% of China's magnesite sales.  (Opp. 30; D.I. 98-2 at 24). Further, Plaintiffs' circular arguments of a Chinese conspiracy based entirely on hearsay from website sources – which nowhere mention the U.S. or any U.S. company – fail to even remotely meet the requisite standard.  *See, e.g., Commercial St. Express LLC v. Sara Lee Corp.*, No. 08 C 1179, 2008 U.S. Dist LEXIS 102298, at *10-11 (N.D. Ill. Dec. 18, 2008) (finding no jurisdiction absent allegations that "any Defendant agreed in Germany, or anywhere else, to restrict competition in the United States").[4]

While the FTAIA may not require that a conspiracy be *primarily* directed at the U.S. as Plaintiffs argue (Opp. 24), nonetheless the alleged effect must be direct – *i.e.*, directed to U.S. trade or commerce in a specific way – and not merely incidental to some alleged conspiracy with a global impact.  Contrary to Plaintiffs' assertions, courts have drawn the line at "allegations [that] amount to little more than activities directed at a foreign market with domestic spillover effects – effects that are not direct and would therefore not constitute a basis for jurisdiction within the meaning of the FTAIA."  *M.M. Global Services, Inc. v. The Dow Chemical Co*., No. 3:02 cv 1107, 2004 U.S. Dist. LEXIS 4139, at * 15 - 18 (D. Conn. Mar. 18, 2004); *see also Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*, 241

---

[4] Contrary to Plaintiffs' assertion (Opp. 25 n.11), in *Commercial St. Express* the plaintiffs did not just allege a conspiracy to fix prices abroad but also alleged "Defendants entered into a conspiracy to artificially raise prices ... in the U.S."  *Id*., at *3.

F.3d 420, 427-30 (5th Cir. 2001) (finding no subject matter jurisdiction and discussing other cases).

### 3.     Plaintiffs Must Rely On Their Own Erroneous Assumptions To Concoct An Effect On U.S. Commerce

Plaintiffs misconstrue arguments by characterizing them as "irrelevant," (Opp. 25-26), but their own submissions show otherwise.  For example, Defendants do not claim that the alleged magnesite groups were "effective" for a short period; rather, Plaintiffs' own sources indicate they were disparate, short lived, ineffective associations.  *See* D.I. 98-2 at 4-5; D.I. 77 at ¶ 59.  This is highly relevant to showing a lack of any effect on U.S. commerce.

And regardless of the "duration" of any alleged association¸ Plaintiffs provide no corroborating evidence – *e.g.*, a trade ticket (all of which already should be in their possession as purchasers and/or assignees of Possehl) – to substantiate their conjecture of having purchased magnesite at fixed prices.  Instead, Plaintiffs rely on general import data, which, as Plaintiffs themselves admit (and discussed in Section 4 below), is subject to variation based on the source and timing of the data, the effect of averaging, and the type and quality of the magnesite. (Opp. 29- 30).  Moreover, these data show that prices in fact varied over the alleged relevant period and were anything but fixed.  (Reply Declaration of Timothy J. Helwick dated October 16, 2009 ("Helwick Reply Decl.", Exh. A).  Likewise, reliance on expert analysis – which the Court already has considered on the prior motion and rejected – is no substitute for the requisite evidentiary support.

The undisputed fact is that China's prices for magnesite remain the lowest in the world and that various exogenous factors (*e.g.*, taxes, tariffs) increased prices – both relevant factors in refuting Plaintiffs' unsupported allegations that the prices of Chinese magnesite exports "have not followed the laws of supply and demand that exist in a

competitive marketplace." The McDonald's premium coffee example disparaged by Plaintiffs (Opp. 26 n.12) has nothing to do with collusion, but aptly illustrates the basic economic principle of greater price elasticity of demand for comparatively lower-priced goods in the face of overall decreasing demand – a principle Plaintiffs cannot dispute.

In short, while they may not be "required to prove the precise effect of a price-fixing conspiracy on U.S. market" (Opp. 27), Plaintiffs fail to show evidence of *any* direct, substantial and foreseeable effect on U.S. commerce to confer subject matter jurisdiction under the FTAIA.

### 4.    Plaintiffs Are Unable To Explain Inconsistencies And Errors In Their Allegations

Plaintiffs' only explanation for the inconsistency between their claim that a "cartel" raised magnesite prices starting in February 2001 and the undisputed fact that Plaintiffs' own sources show prices were lower five years later is that there were "additional meetings at which prices were discussed and agreed upon." (Opp. 28). This non-response only adds a further contradiction, since Plaintiffs' whole case is premised on the unsubstantiated theory that prices were raised, not lowered, by purported collusion. (Opp. 26) ("the magnesite export associations have generally tended to increase the price of exported grades")).

Plaintiffs also try to explain inconsistencies in the data they cite based on the source, form of presentation (quarterly, year-end, or yearly average), and type/quality of magnesite at issue. (*Id*. 29 – 30). This plainly demonstrates that Plaintiffs' reliance on such data to show "collusion" is specious.[5] Far from evidencing price fixing, the USTIC data

---

[5] For example, Plaintiffs claim that USTIC data showing that the price for "DBM" decreased to $100/mt in the first quarter of 2000, increased to $111/mt in the second quarter, to $136/mt in the
(footnote continued)

shows nothing more than that prices of Chinese magnesite varied over time, including annually.  (*See* Helwick Reply Decl., Exh. A).

Plaintiffs' suggestion that alleged discussions by Defendants of the mere "possibility" of a price increases (*e.g.*, in February 2007) are adequate to avoid dismissal is simply wrong.  (Opp. 28).  Such "discussions" "do not permit the court to infer more than the mere possibility of misconduct," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), especially in light of evidence of other factors effecting prices.  Significantly, Plaintiffs admit that price increases for Chinese magnesite are not, by themselves, evidentiary proof of collusion.  (Opp. 29).  Yet merely by adding more vague and unsubstantiated allegations of meetings among various "conspirators" at which prices allegedly were discussed, Plaintiffs do not cure the deficiencies the Court found in their prior pleadings. [6]

For at least the reasons set forth above, Plaintiffs have failed to produce the "evidentiary proof" of a direct effect on U.S. commerce directed by the Court.

---

third quarter, and to $158/mt in the fourth quarter of 2000, is "consistent with Plaintiffs' allegation" of cartels forming and raising prices.  (*Id*. 29 -30).  Yet Plaintiffs omit to mention that the USTIC data (which contrary to Plaintiffs' assertion includes both fused and dead burned magnesia) also shows a similar price pattern two years later in 2002 – dropping to $118/mt in the first quarter of 2002 and increasing each quarter to $158/mt by the fourth quarter.  (Helwick Decl., Ex. A).

[6] With respect to errors, Plaintiffs argue that "none exist," yet also admit that "[t]he Sinosteel Movants correctly indentify a typographical error in paragraph 48 of the Amended Complaint." (Opp. 28, 30).  Plaintiffs also ignore that paragraph 50 wrongly asserts that "[t]he United States consumes about 25 percent of China's magnesite exports," whereas the data relied upon shows only 15% (not 25%) (*see* D.I. 98-2 at 30) – confirming that China's export and trading activities are global in nature and not directed to the U.S.  *See* Opinion, at 856.

**C.    Defendants' Foreign Conduct Does Not Have An Anti-competitive Effect On Domestic Commerce Giving Rise To A Sherman Act Claim**

Citing an inapposite section of the DOJ's Guidelines "involving import commerce," Plaintiffs misleadingly claim that "alleging the direct sale of price fixed-goods to U.S. companies '*almost invariably*' satisfy [sic] *Hartford Fire*'s substantial effects test." (Opp. 31; Guidelines § 3.11).  However, "[w]hether they in fact produce the requisite substantial effects will depend on the facts in each case."  Guidelines § 3.11 at 11.  As noted, the Sinosteel/Jiayi Defendants sell magnesite *in China* for export worldwide, primarily to brokers who act as intermediaries, some of whom import into the U.S.  As made clear in the DOJ Guidelines cited by Plaintiffs, absent a specific agreement to fix prices *in the U.S.*, "[t]he mere fact that the existence of U.S. sales or the level of U.S. prices may ultimately be affected by the cartel agreement is not enough for either *Hartford Fire* jurisdiction or the FTAIA."  Guidelines, § 3.121, Illus. C, Var. (1) at 13.  Not surprisingly, the DOJ has not brought an action against any Chinese Defendant relating to magnesite.

Plaintiffs go to great lengths to try – unsuccessfully – to distinguish the holding of *Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 299 F.3d 281, 295 (4th Cir. 2002). (Opp. 32-33).  Contrary to Plaintiffs' suggestion, the Fourth Circuit not only held that the jury was properly instructed to apply *Hartford Fire*'s "substantial effects" test to determine jurisdiction, but also the Court further denied a challenge to the jury's finding "of no substantial effect" notwithstanding the evidence of some direct sales in the U.S. to U.S. customers.  *Dee-K Enters.* 299 F.3d at 285 n.1.  Moreover, nothing in *Dee-K Enterprises* prohibits dismissal at the pleading stage where, as here, there is no evidence of any effect on U.S. trade or commerce of the alleged Chinese conspiracy to fix global magnesite prices.

**D.**     **The FSIA Bars Jurisdiction Over Chinese State-Owned Sinosteel**

Sinosteel is immune from jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") because (i) it is directly owned by the Chinese government, and (ii) the Amended Complaint contains no specific allegations with respect to Sinosteel. (98-2 at 34). Plaintiffs' only response to this well-settled point (other than to confuse Sinosteel and Sinosteel Trading) is to make the bald, unsupported assertion that "Sinosteel conspired with Defendants to fix the price of exports to the United States and, in fact, is on the Standing Committee of the CCCMC." (Opp. 34). Notably, none of the paragraphs in the Amended Complaint or the new exhibit cited by Plaintiffs even mentions Sinosteel.[7] For the reasons already stated by the Court with respect to the FTAIA, such conclusions are insufficient to confer subject matter jurisdiction under the FSIA as well.

**II.**     **The Abstention Doctrines Require Dismissal Of The Amended Complaint**

**A.**     **The Chinese Government Mandates Price Coordination For Natural Mineral Resources Including Processed Magnesite**

Plaintiffs admit that China's Ministry of Commerce ("Ministry") includes magnesite among the products subject to government-mandated export bidding and licensing requirements. (Opp. 11). Plaintiffs then misleadingly cite various regulations purportedly "in reverse chronological order" in an attempt to show that lack of a minimum price coordination requirement. (*Id*. 11-13). However, Plaintiffs do not challenge that the "Working Rules" requiring coordinated pricing were in place from December 4, 1999

---

[7] Plaintiffs refer to Exhibit 29 of the Declaration of R. Magnanini for the proposition that Sinosteel is a member of the Standing Committee of the CCCMC. Not only does this exhibit not identify Sinosteel in that role, but even if it did, this would not confer jurisdiction under the FSIA.

KL3 2745902.1

through September 7, 2007, and thus were in effect at all times during this period –
including when the original Complaint was filed in 2005.

As Plaintiffs admit, the 1999 Working Rules provided that a price cannot be
lower "than the coordinating price regulated by the relevant import and export commerce
commission" – *i.e.*, the CCCMC in the case of Processed Magnesite.  (*Id.* 13).  The fact that
other regulations adopted in the interim may not mention price coordination is no more
relevant than the fact that not all securities regulations promulgated since the Securities
Exchange Act of 1934 mention insider trading, nor does every antitrust regulation adopted
since the Sherman Act mention horizontal price fixing.

Plaintiffs also conveniently omit mention of other Chinese regulations
adopted in the interim that confirm the requirement of export price coordination:

- D.I. 35-54 at Art. 8(6) (Effective Date: 1/1/2000): "When examining an application for an export license, the releasing authority shall inspect the contents as follows: . . . 6. Examine export contract: especially examine: (1) price.  ***Price of goods on export license shall be the same as that in the export contract, not lower than the coordinating price regulated by the relevant import and export commerce commission [*i.e.*, CCCMC]***." (Emphasis added).

- D.I. 35-57 at Art. 16 (Effective Date: 1/1/2002): "The license issuing agencies shall stress on the examination and verification of the prices of export commodities when examining the export contracts, the commodity prices on the export licenses shall be the same as the prices in the export contracts; but ***when the prices in the export contracts are lower than the recommended export price fixed by the relevant chambers of commerce [*i.e.*, CCCMC]., the license issuing agencies shall refuse to issue the export licenses.***"  (Emphasis added).

- D.I. 35-61 at I(2) (Effective Date: December 2003): "Working Rules on the Application for an Export License": "When the export prices are recommended by the chambers of commerce, ***the export price shall be in compliance with the relevant price limit regulations***." (Emphasis added).

These regulations are consistent with the explanation of the operation of the
magnesite industry in China provided in the multiple declarations submitted by the

14

Sinosteel, Jiayi and Minmetals defendants.  *See, e.g.,* D.I. 35-14, 35-16, 35-18, 35-20, 35-22, 35-38.  At all relevant times, the Chinese regulatory scheme prohibited export of Processed Magnesite at prices below a minimum set by the CCCMC and authorized by MOFTEC.  Thus, Plaintiffs' contention that there is no evidence of actual compulsion (Opp. 48) rings hollow.

Regardless of whether the mandated coordination succeeded – or did not, as Plaintiffs argue (*see* Opp. 49; *see also* D.I. 98-2 at 11) – the regulations imposed by the Chinese government compelled the very activities complained about in the Amended Complaint.  Indeed, the fact that there may not have been full compliance with the Chinese regulations, as Plaintiffs argue (Opp. 49), in no way suggests that these regulations were not compulsory, as evidence of less than full compliance with the U.S. tax laws does not indicate that income taxes are voluntary.

Plaintiffs reliance on *In re Vitamin C Antitrust Litigation,* 584 F. Supp.2d 546 (E.D.N.Y. 2008), also is misplaced.  In that case, Judge Trager denied the motion to dismiss because defendants had failed to set forth sufficient evidence concerning the regulatory scheme such that "the voluntariness of defendants' actions" were in dispute, requiring further discovery.  *Id.* at 559.  By contrast, here, plaintiffs at best allege price coordination consistent with China's regulatory scheme for magnesite and their Opposition is noticeably silent on any *evidence* of exports of magnesite above the set price.

Nor do the Antidumping Provisions cited by Plaintiffs (Opp. 38-39) help their argument.  In fact, these provisions require MOFTEC to "entrust various import and export chambers of commerce . . . to be responsible for the specific work of organizing and coordinating enterprises to respond to antidumping actions."  D.I. 105-33, Art. 5, ¶ 1.  The

only discretionary language relates to the ability of MOFTEC to "entrust other organizations or agencies . . . to organize and coordinate the work of action."  *Id.*  at ¶ 2.[8]

For at least these reasons, the record plainly sets forth government-imposed price coordination for Processed Magnesite.

**B.**      **The Act of State Doctrine Applies**

Plaintiffs argue that the act of state doctrine does not apply.  (Opp. 34-44). The doctrine does apply here as explained in *W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990) – the "act of state issues only arise when a court must decide – that is, when the outcome of a case turns upon – the effect of official action by a foreign sovereign."  Here, for the Court to determine whether Defendants' alleged price coordination – or "price fixing" in Plaintiffs' words – of Processed Magnesite for export was anticompetitive, the Court has to determine not only whether such coordination in fact occurred, but also whether it was a proper exercise of China's sovereign authority to regulate the export of its scarce resources.

As previously explained, in order to protect its local minerals industry, to counter charges of "dumping" and to try to prevent smuggling, China's central government adopted a regulatory export quota and licensing system that requires traders of magnesite to adhere to certain minimum prices and volumes for Processed Magnesite available for

---

[8] Plaintiffs' reliance on *United States v. Watchmakers of Switzerland* misses the mark.  In that case, the court recognized that, "[i]f the defendants' activities had been required by Swiss law, this court could indeed do nothing" – the same as the situation here.  No. 96-170, 1962 U.S. LEXIS 5816 (S.D.N.Y. Dec., 20, 1962) at *152.  The doctrine would not apply to a situation where "the defendants' activities were not required by the laws of Switzerland" but rather the government merely "approve[d] of the effects of [the] private activity" – a situation not present here.  *Id.*  As explained above, the Chinese regulations dictated the allegedly illegal conduct, not any "approval of the effects" of that conduct.

export.  (D.I. 98-2 at 4, 33-35).[9]  Defendants' opening brief points out how the Amended

Complaint alleges nothing more than that various members of the CCCMC got together and

discussed minimum pricing and export quotas, which is entirely consistent with the Working

Rules of the Ministry (*i.e.*, the Chinese sovereign) and related regulations in effect at the

time.

      For the Court to determine that the effects of such conduct were

anticompetitive, it would have to declare invalid the Chinese central authority's right to

regulate within its borders the protection and export of its natural resources as it sees fit.

Whether the CCCMC is an arm of the Chinese government is irrelevant – it was authorized

by the Ministry to implement the export quota and licensing system adopted by the central

government to protect its natural resources.[10]  (D.I. 98-2 at 38-39).  For at least these

reasons, the act of state doctrine applies.

    **C.**    **Principles of Comity Favor Abstention**

      Plaintiffs' argument to avoid application of comity is merely a conclusory

restatement of the theory of the Amended Complaint – that Defendants colluded on

---

[9] Plaintiffs' contention (Opp. 49) that, if such regulations were in effect, all exporters would have followed these regulations is misguided.  Plaintiffs ignore the fact raised in the Sinosteel/Jiayi Defendants moving papers (at 2) that there existed a substantial grey market smuggling Processed Magnesite out of China without compliance with these regulations.  *See also* D.I. 35-62 at IV (noting smuggling problem and specifically subjecting magnesite to licensing administration).

[10] Plaintiffs reliance on *United States v. Sisal Sales Corp.*, 274 U.S. 268 (1927)(at 37-38) is also misplaced.  In that case, the act of state doctrine did not apply because, unlike the situation here, there was "a contract, combination, and conspiracy entered into by parties *within the United States and made effective by acts done therein*."  *Sisal*, 274 U.S. at 276 (emphasis added).  As a result, the "discriminatory legislation" that aided the conspirators was irrelevant because the conspirators (unlike here) engaged in "deliberate acts, *here [in the U.S.]* and elsewhere, [and] *they brought about foreign results within the United States*.  They are within the jurisdiction of our courts and may be punished for offenses against our laws."  *Id.* (emphasis added).

magnesite export prices.  This argument continues to ignore the substantial evidence of the Chinese regulatory scheme for magnesite set forth in virtually every moving paper in this case, as well as in multiple declarations of professionals actively working in the industry. Repeating this theory cannot overcome the deficiencies in the Amended Complaint and in the alleged underlying "proof."

Plaintiffs misleadingly argue that there is no "true conflict" between U.S. and foreign law to trigger comity because there is no "Chinese law requiring Defendants to reach collusive agreements with their competitors."  (Opp. 51).  As explained in detail above and in Defendants' opening brief, that simply is not the case.  Because Plaintiffs proffer no evidence that Defendants did anything more than comply with the Chinese export regulations, the Court should refrain from applying the U.S. antitrust laws that conflict with these sovereign regulatory requirements.

Plaintiffs also ignore the *Mannington Mills* factors for exercising comity and once again repeat their own circular arguments.  For reasons already stated, and especially given China's undeniable sovereign interest in regulating its commodity exports and Defendants' activities in China, the Court should decline to exercise jurisdiction over such wholly foreign activities.

III.   **Plaintiffs Are Not Entitled To Discovery**

Plaintiffs' request for discovery should be denied.  Plaintiffs bear the initial burden of coming forward with sufficient evidence to establish jurisdiction, Opinion, 596 F. Supp.2d at 850, n.4, which they fail to do.  The Court also dismissed their pleading for failure to state a claim and set forth a detailed briefing schedule for several dispositive motions to be completed before any discovery would be appropriate.  Plaintiffs are not entitled to discovery on dismissed claims and face many more hurdles to restating their

18

claims, as set forth in a letter that counsel for Defendants sent to Plaintiffs' counsel.  (D.I.

105-36).  Having failed to come forth with a shred of evidence to substantiate their claims,

Plaintiffs should not be allowed to go on a proverbial fishing expedition and burden

Defendants with premature discovery requests.

## <u>CONCLUSION</u>

For the reasons set forth above and in Defendants' moving papers, the Court

should dismiss the Amended Complaint with prejudice for lack of subject matter jurisdiction

or, alternatively, abstain from asserting jurisdiction for reasons of act of state, sovereign

compulsion, and comity.

Date: October 16, 2009

Respectfully submitted,


**Robinson, Wettre & Miller LLC**

By     **/s/ Donald A. Robinson**
Donald A. Robinson
Attorneys at Law
Two Penn Plaza East
Newark, New Jersey  07105
(973) 690-5400

and

**Kramer Levin Naftalis & Frankel LLP**

1177 Avenue of the Americas
New York, New York  10036
(212) 715-9100
Attorneys for Defendants
Sinosteel Corporation, Sinosteel Trading
Company, Liaoning Jiayi Metals & Minerals Co.,
Ltd.

KL3 2745902.1