# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
ANIMAL SCIENCE PRODUCTS, INC., et al.,    :
:          Civil No. 2:05-cv-04376 (KM) (MAH)
Plaintiffs,    :
:
- against -    :
:          Motion Date: February 17, 2015
CHINA MINMETALS CORPORATION, et al.,    :
:
Defendants.    :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

**Skadden, Arps, Slate, Meagher & Flom LLP**

Shepard Goldfein
Thomas Pak
Sean M. Tepe
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Defendants China Minmetals*
*Corporation, China National Minerals Co., Ltd.*

**Robinson, Wettre & Miller LLC**

Keith J. Miller
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400

**Kramer Levin Naftalis & Frankel LLP**

Jonathan S. Caplan
Mark A. Baghdassarian
Geoffrey G. Hu
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9000

*Attorneys for Defendants Sinosteel*
*Corporation, Sinosteel Trading Co.,*
*Liaoning Jiayi Metals & Minerals Co., Ltd.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ...................................................................................................1

I.      PLAINTIFFS LACK STANDING ...............................................................4

        A.      Resco Has Failed To Allege Standing As A Direct Purchaser ..............................4

        B.      Intersource Has Failed To Allege Standing As A Direct Purchaser ......................7

        C.      Animal Science Has Failed To Allege Standing To Seek An Injunction ...............9

                1.      Animal Science has not alleged a threat of imminent injury ...................10

                2.      Animal Science has not alleged injury that is proximately caused
                        by the alleged unlawful conduct in China...................................................11

II.     ACTIONABLE DIRECT PURCHASER CLAIMS, IF ANY, MUST BE
        ARBITRATED IN CHINA .........................................................................14

III.    INTERSOURCE CANNOT SUBSTITUTE FOR RESCO.........................15

        A.      Plaintiff Resco May Not Amend The Complaint To Add Intersource .................16

        B.      Intersource's Claim Is Barred By The Statute of Limitations ..............................18

IV.     THE SECOND AMENDED COMPLAINT FAILS TO SATISFY THE
        ELEMENTS OF THE FTAIA .....................................................................20

        A.      The SAC Does Not Satisfy The "Import Exception" ...........................................20

        B.      The SAC Does Not Satisfy The "Effects Exception"...........................................23

                1.      There are no allegations of a "direct, substantial and reasonably
                        foreseeable effect" on U.S. commerce.......................................................23

                2.      There are no allegations that an effect on U.S. commerce gave rise
                        to Plaintiffs' claims...................................................................................25

V.      PLAINTIFFS' FAILURE TO ALLEGE NON-GOVERNMENT COMPELLED
        CONDUCT AND PRICES SUPPORTS DISMISSAL ................................27

CONCLUSION.......................................................................................................29

## TABLE OF AUTHORITIES

<u>CASES</u>

*Allen v. Wright,*
    468 U.S. 737 (1984) ............................................................................................9

*Alvin v. Suzuki,*
    227 F.3d 107 (3d Cir. 2000) ............................................................................16

*American Hotel International Group Inc. v. OneBeacon Insurance Co.,*
    611 F. Supp. 2d 373(S.D.N.Y. 2009) ........................................................28, 29

*Animal Science Products, Inc. v. China National Metals & Minmetals Import & Export*
    *Corp.* (*ASP I*), 702 F. Supp. 2d 320 (D.N.J 2010) ................................... *passim*

*Animal Science Products, Inc. v. China Minmetals Corp.* (*ASP II*),
    No. 2:05-cv-04376, 2014 WL 3695329 (D.N.J. July 24, 2014) .............................. *passim*

*Animal Science Products, Inc. v. China Minmetals Corp.* ,
    654 F.3d 462 (3d Cir. 2011) ........................................................................20, 21

*Arrow Drilling Co., Inc. v. Carpenter,*
    No. 2:02-CV-09097, 2003 WL 23100808 (E.D. Pa. Sept. 23, 2003) ...............................18

*In re ATM Fee Antitrust Litigation,*
    686 F.3d 741(9th Cir. 2012) .............................................................................9

*California Public Employees' Retirement System v. The Chubb Corp.,*
    No. Civ. 00-4285, 2002 WL 33934282 (D.N.J. June 26, 2002) ......................................20

*Carpet Group International v. Oriental Rug Importers Ass'n,*
    227 F. 3d 62 (3d Cir. 2000) .............................................................................21

*In re Colonial Ltd. Partnership Litigation,*
    854 F. Supp. 64 (D. Conn. 1994) .....................................................................18

*Commercial Street Express LLC v. Sara Lee Corp.,*
    No. 08 C 1179, 2008 WL 5377815 (N.D. Ill. Dec. 18, 2008) .........................................24

*Cox v. Sherman Capital LLC,*
    No. 1:12-cv-01654, 2014 WL 4370680 (S.D. Ind. Sept. 3, 2014) .....................................17

*Daiichi Sankyo, Inc. v. Apotex, Inc.,*
    No. 030937, 2009 WL 1437815 (D.N.J. May 19, 2009) ...................................28

*In re DDAVP Indirect Purchaser Antitrust Litigation,*
    903 F. Supp. 2d 198 (S.D.N.Y. 2012) ..............................................................11

*Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*,
    299 F. 3d 281 (4th Cir. 2002) .......................................................................23

*In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litigation*,
    No. 12-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013) .................................11, 13

*In re Dynamic Random Access Memory ("DRAM") Antitrust Litigation*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ........................................................12

*In re Elscint, Ltd. Securities Litigation*,
    674 F. Supp. 374 (D. Mass. 1987) ................................................................19

*Ethypharm S.A. France v. Abbott Laboratories*,
    707 F.3d 223 (3d Cir. 2013).............................................................................4

*Eurim–Pharm GmbH v. Pfizer Inc.*,
    593 F. Supp. 1102 (S.D.N.Y.1984)...............................................................24

*Evenchik v. Avis Rent A Car System, LLC*,
    No. 12-cv-61, 2013 WL 2301224 (S.D. Cal. May 24, 2013) ..........................18

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004)........................................................................................21

*Flanagan v. Allstate Insurance Co.*,
    No. 01 C 1541, 2007 WL 1381524 (N.D. Ill. May 3, 2007) ...........................15

*In re Flash Memory Antitrust Litigation*,
    No. C 07-0086, 2010 WL 2465329 (N.D. Cal. June 10, 2010) .............16, 17, 18

*Foman v. Davis*,
    371 U.S. 178 (1962)........................................................................................16

*Gross v. Stryker Corp.*,
    858 F. Supp. 2d 466 (W.D. Pa. 2012) ............................................................17

*Lans v. Gateway 2000, Inc.*,
    84 F. Supp. 2d 112 (D.D.C. 1999) .................................................................18

*Hartford Fire Insurance Co. v. California*,
    509 U.S. 764 (1993)........................................................................................23

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977).........................................................................................4

*International Ass'n of Machinists and Aerospace Workers ("IAM") v. OPEC*,
    477 F. Supp. 553 (C.D. Cal. 1979) ................................................................13

*Kruman v. Christie's International PLC*,
    284 F.3d 384 (2d Cir. 2002) ...............................................................22

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co.*,
    753 F.3d 395 (2d Cir. 2014)..................................................24, 25, 26

*Mag Instrument, Inc. v. JS Products, Inc.*,
    595 F. Supp. 2d 1102 (C.D. Cal. 2008) ...............................................8

*In re Magnesium Oxide Antitrust Litigation*,
    No. 10-5943, 2012 WL 1150123 (D.N.J. Apr. 5, 2012).........................12

*McCarthy v. Recordex Service, Inc.*,
    80 F.3d 842 (3d Cir. 1996)...................................................................9

*Maine State Retirement System v. Countrywide Financial Corp.*,
    722 F. Supp. 2d 1157 (C.D. Cal. 2010) ...............................................19

*Mid-West Paper Products Co. v. Continental Group, Inc.*,
    596 F.2d 573 (3d Cir. 1979)................................................................10

*Minn-Chem, Inc. v. Agrium Inc.*,
    683 F.3d 845 (7th Cir. 2011)...............................................................24

*Motorola Mobility LLC v. AU Optronics Corp.*
    No. 14-8003, 2014 WL 6678622 (7th Cir. Nov. 26, 2014) ................22, 25, 26

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
    522 F.3d 6 (1st Cir. 2008).............................................................10, 11

*Noonan v. Sempris, LLC*,
    No. C13-257, 2013 WL 5569468 (W.D. Wash. Oct. 9, 2013) .........................18

*In re Packaged Ice Antitrust Litigation*,
    No. 08-MDL-1952, 2011 WL 6178891 (E.D. Mich. Dec. 12, 2011) ...............18

*Polanco v. Omnicell, Inc.*,
    988 F. Supp. 2d 451 (D.N.J. 2013) .......................................................8

*In re Potash Antitrust Litigation*,
    667 F. Supp. 2d 907 (N.D. Ill. 2009) ...................................................13

*In re Puda Coal Securities Litigation*,
    No. 11 Civ. 2598, 2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) .......................19

*S. Cherry Street LLC v. Hennessee Group LLC*,
    573 F.3d 98 (2d Cir. 2009)...................................................................5

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998)...............................................................................................4, 10, 11

*Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*,
    530 F.3d 204 (3d Cir. 2008)..........................................................................................18

*Turicentro, S.A. v. American Airlines Inc.*,
    303 F.3d 293 (3d Cir. 2002)..........................................................................................21

*United States v. LSL Biotechnologies*,
    379 F.3d 672 (9th Cir. 2004) .........................................................................................24

*Vega v. Davis*,
    572 F. App'x 611 (10th Cir. 2014)...................................................................................5

*Warren General Hospital v. Amgen Inc.*,
    643 F.3d 77 (3d Cir. 2011)...............................................................................................8

*In re Wells Fargo Mortgage-Backed Certificates Litigation*,
    No. 09-CV-01376, 2010 WL 4117477 (N.D. Cal. Oct. 19, 2010) ...................................19

## STATUTES

15 U.S.C. § 15b....................................................................................................................18

15 U.S.C. § 6a.................................................................................................................20, 23

## OTHER AUTHORITIES

H.R. Rep. No. 97-686, *reprinted in* 1982 U.S.C.C.A.N. 2487 (1982) .........................................21

3 Moore's Federal Practice § 15.14[3] (3d ed. 2014) ..................................................................17

## INTRODUCTION

Defendants[1] respectfully move this Court to dismiss the Second Amended Class Action Complaint ("SAC") because it fails to cure the deficiencies that triggered the dismissal of the First Amended Class Action Complaint ("FAC"). The SAC's only accomplishment is to drive up the cost of litigation and unnecessarily burden this Court.

In dismissing the FAC, the Court granted leave to amend with the explicit instruction that any amended pleading must provide more factual specificity and greater clarity in allegations to fix deficiencies identified with respect to the issues of standing, arbitration, and the Foreign Trade Antitrust Improvements Act ("FTAIA"). The Court found that all three issues have a "logical nexus" and turn on "the degree of attenuation between Defendants' alleged antitrust activity and Plaintiff's alleged injury." As such, they "all depend to some degree on plaintiffs' describing the purchases they made, and the terms of the contracts under which they made them."

In the SAC, however, Plaintiffs have failed once again to provide sufficient factual allegations supporting their purported purchases or a causal connection between their alleged injury and Defendants' alleged unlawful foreign conduct. With the exception of adding a new named Plaintiff (Intersource, Inc.)—an amendment neither authorized by the Court nor properly requested by Plaintiffs—the SAC is nearly identical to the dismissed FAC. This is evident in a line-by-line comparison of the complaints that accompanies this Memorandum.[2] If anything, the comparison overstates the amount of change because the additional factual

---

[1]    Defendants are China Minmetals Corp., China National Minerals Co., Ltd., Sinosteel Corp., Sinosteel Trading Co., and Liaoning Jiayi Metals & Mineral Co., Ltd. There are additional named defendants who have not appeared.

[2]    *See* Declaration of Thomas Pak ("Pak Decl."), Exhibit 1.

allegations relating to Resco and Animal Science were already in the record and considered by the Court.

As a consequence, all of the failures identified by the Court remain. Thus, Resco Products, Inc. continues to lack antitrust standing as a direct purchaser because it did not purchase magnesite directly from any Defendants and now admittedly lacks evidence of direct purchases made by its claims assignor, Possehl, Inc. (or Possehl (US)). And as before, Animal Science Products, Inc. lacks standing to seek an injunction because alleged unlawful conduct occurring roughly eight or more years ago cannot support a threat of immediate injury requiring injunctive relief, and the SAC still says "almost nothing" about Animal Science's injury or how that injury results from the alleged unlawful conduct of Defendants.

With their case in jeopardy, Plaintiffs' counsel now attempt to bring in a new Plaintiff, purported direct purchaser Intersource, even though its addition to the SAC was not requested or authorized. Intersource's addition should be denied as *inter alia* unduly delayed—Resco's deficient standing has been obvious throughout this litigation—and futile. Futile because Plaintiffs' contemplated replacement for Resco also lacks standing. Not only does the SAC fail to allege any direct purchases by Intersource from any Defendants, it fails to allege direct purchases of magnesite. The SAC attaches four invoices that are alleged to be "representative" of Intersource's purchases, and all four show purchases of an entirely different product, Chinese magnesia carbon bricks and not the magnesite whose export prices were allegedly fixed.

Defendants also renew their motion to compel arbitration, although Defendants recognize that this motion may again be deemed moot to the extent the Court finds Resco and Intersource lack standing. Nonetheless, there is value in evaluating Plaintiffs' response to the

Court's previous ruling on arbitration, for it speaks volumes regarding either Plaintiffs' ability or inclination to prosecute this case. Previously, the Court found the existence of arbitration agreements concerning Resco's purchases to be "murky, a state of affairs for which Plaintiffs are primarily responsible." Since there appears to be no evidence of direct purchases from Defendants by Resco or its assignor, the SAC's continued silence regarding the existence of arbitration agreements with Resco is understandable. Less clear is why Plaintiffs remained silent on whether Intersource's purchases were subject to arbitration. The submitted invoices are not accompanied by the underlying sales contracts and lack the terms and conditions of sale. So even though the Court expressed frustration with Resco's lack of proof concerning the presence or absence of arbitration agreements, Plaintiffs are intentionally silent on whether Intersource's purchases were subject to arbitration.

Plaintiffs' inability or unwillingness to reform their allegations to satisfy the pertinent legal standards or the pleading guidance offered by the Court is not relegated to the issues of standing and arbitration. It extends to their allegations concerning the FTAIA and the doctrine of foreign sovereign compulsion. Regarding the latter, Plaintiffs have chosen not to allege facts showing that Defendants entered into agreements to fix the price of magnesite exports above the government compelled minimum export price, thereby leaving this Court's finding of foreign sovereign compulsion as law of the case. With respect to the FTAIA, Plaintiffs added no new factual allegations and only a few conclusory recitations of the elements of the statute. For some of the same reasons the SAC cannot support Plaintiffs' standing, it cannot satisfy either the "import commerce" or "effects" exceptions to the FTAIA's prohibition of the application of the Sherman Act to foreign conduct.

Now, after nine plus years of litigation consuming countless hours of judicial and

party resources and multiple opportunities to amend, accompanied by multiple detailed pleading roadmaps from this Court, one thing is clear: the SAC and this litigation should be dismissed with prejudice.

## I.      PLAINTIFFS LACK STANDING

To have "standing" to bring a private antitrust claim, a plaintiff must clear constitutional hurdles to federal court jurisdiction arising under Article III of the Constitution as well as prudential hurdles.  *See, e.g.*, *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, No. 2:05-cv-04376, 2014 WL 3695329, at *21 (D.N.J. July 24, 2014) [hereinafter "*ASP II*"].  The constitutional hurdles consist of sufficiently alleging (and ultimately proving) the existence of an "injury in fact" suffered by plaintiff that is "concrete" and not "hypothetical"; "causation" or "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant"; and that the requested relief will "redress" the alleged injury.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citations omitted).  The prudential hurdles consist of alleging and then proving the existence of the related, but distinct, concepts of "antitrust injury" and "antitrust standing."  *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231-32 & n.17 (3d Cir. 2013).  Plaintiffs Resco and Animal Science again fall short of clearing these hurdles in the SAC, and new Plaintiff Intersource fares no better.

### A.      Resco Has Failed To Allege Standing As A Direct Purchaser

Although the Supreme Court has fashioned a multi-factor test for "antitrust standing" that includes "antitrust injury" as one prong, it has also articulated one bright line rule concerning Clayton Act Section 4's private right of action for damages.  Under the Supreme Court's *Illinois Brick* decision, only the direct purchaser would be recognized as the injured party for purposes of an antitrust cause of action for damages.  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729 (1977).

4

Previously, this Court concluded that Resco lacked antitrust standing because it failed to satisfy the requirements of the *Illinois Brick* "direct purchaser rule." Specifically, the FAC did not allege facts demonstrating any purchases of magnesite by Resco directly or by the broker, Possehl (US), which assigned antitrust claims it may have had to Resco. *ASP II*, 2014 WL 3695329, at *27-29, *32-39. Furthermore, the FAC did not satisfy the requirements necessary to base antitrust standing on purchases from an alleged co-conspirator. *Id*. at *29-32.

Rather than offer a cure for these fatal deficiencies in the SAC, Plaintiffs offer an excuse: Plaintiffs are unable to support allegations of direct purchases by Possehl (US) because "Possehl is no longer in existence," and Plaintiffs have been unable to obtain evidence from former employees. SAC ¶ 16. An allegation that it tried, but failed, to locate additional facts in accordance with this Court's direction cannot satisfy the requisite pleading standard. *See, e.g.*, *Vega v. Davis*, 572 F. App'x 611, 616 (10th Cir. 2014) (rejecting plaintiff's argument that motion to dismiss should be denied due to his "lack of access to relevant information"). Moreover, this excuse is particularly weak given that it is the consequence of Plaintiffs' own lack of diligence. To the extent evidence of direct purchases by Possehl (US) ever existed, Plaintiffs have had the opportunity since at least 2005 when they filed their original complaint to obtain the necessary evidence.

Despite this, Plaintiffs have the temerity to try to avoid their pleading failure by shifting the burden to Defendants to demonstrate direct purchases: "Evidence of Possehl's direct purchases are in the hands of the Defendants." SAC ¶ 16. As an initial matter, Resco's speculation that Defendants may have information that would satisfy Resco's pleading requirements cannot satisfy its burden. *See, e.g.*, *S. Cherry St. LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 114 (2d Cir. 2009) (rejecting argument that "facts would be peculiarly within the

5

knowledge of the defendants" excuses a failure to provide necessary factual allegations).

In any event, Defendants have identified contracts that show direct magnesite sales to Possehl (HK) but not to Possehl (US). *ASP II*, 2014 WL 3695329, at *37. As the Court previously found, this distinction is critical because it is Possehl (US), not Possehl (HK), that assigned any rights it may have to Resco. *Id*. at *38-39. Resco cannot have antitrust standing as the assignee of Possehl (US)'s rights because there is no evidence that Possehl (US) made direct purchases of magnesite. *Id.* at *36.

Resco also attempts to rely on purchases from alleged "co-conspirators" Rongyuan Magnesite Corp. and Yingkou Sanhua Refractory Material Co., Ltd. for direct purchaser standing. SAC ¶¶ 11-12. As this Court previously explained, an exception to the *Illinois Brick* direct purchaser rule is "the so-called 'co-conspirator exception.'" To the extent that the co-conspirator exception applies under Third Circuit jurisprudence, the exception "require[s] (1) collusion between defendants and intermediaries immediately upstream" of the defendants; and (2) naming of such "intermediaries as defendants." *ASP II*, 2014 WL 3695329, at *30.

The Court concluded that the FAC failed to satisfy either requirement. Because the allegations relevant to these requirements have remained unchanged in the SAC, as demonstrated by the comparison in Exhibit 1 to the accompanying Pak Decl., the SAC fails for all of the same reasons the Court had identified previously. The SAC does not name "co-conspirators" Rongyuan and Yingkou as defendants. And, significantly, the SAC "contains *no facts* sufficient to plausibly suggest that these two entities were co-conspirators." *Id*. at *31. Simply attaching "the epithet 'co-conspirator' to Rongyuan and Yingkou" was before, and still is, "not enough" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id*. Because

Resco cannot demonstrate any direct purchases of magnesite to confer antitrust standing (or even a live "case or controversy" under Article III for that matter), its damages claim should be dismissed with prejudice.

**B.     Intersource Has Failed To Allege Standing As A Direct Purchaser**

Recognizing that Resco's claim would not likely survive a renewed motion to dismiss, Plaintiffs have tapped Intersource to represent the direct purchaser damages class. However, Intersource's own claim to standing suffers from a series of fatal flaws, each of which independently supports dismissal.

To begin, the SAC does not allege any direct purchases of magnesite from *a Defendant* engaged in price-fixing.  Rather, the SAC alleges purchases from non-Defendant "co-conspirators" Haicheng City Xiyang Import & Export Co. and Haicheng Xiyang Refractories Materials Corp. (collectively "Haicheng Xiyang").   SAC ¶¶ 18, 36.  However, Plaintiffs failed to join the Haicheng Xiyang entities as Defendants.  Moreover, the SAC alleges "*no facts sufficient to plausibly suggest that these two entities were co-conspirators*" in the alleged conspiracy.  *ASP II*, 2014 WL 3695329, at *31.  For the same two reasons Resco failed to plead direct purchaser standing based on purchases from alleged co-conspirators Rongyuan and Yingkou, Intersource has failed to plead direct purchaser standing based on its purchases from Haicheng Xiyang.

Furthermore, the SAC undermines any suggestion that Intersource was a direct purchaser of *magnesite*.  The SAC alleges that Intersource "purchased magnesite directly," and cites to Exhibit 21 for a "representative sample" of those direct purchases.  SAC ¶ 18 & n.3. However, the "representative" invoices provided in Exhibit 21 contradict the otherwise unsupported allegation that Intersource purchased magnesite directly.  Those invoices show that Intersource purchased magnesia carbon bricks, which is *an entirely different product from*

*magnesite*.  Where an exhibit to the complaint or a document underlying the pleading contradict the allegation, the exhibit or document controls.  *See, e.g.*, *Polanco v. Omnicell, Inc*., 988 F. Supp. 2d 451, 457 n.6 (D.N.J. 2013) (ruling the court need not accept allegations in complaint as true when contradicted by exhibits to the complaint).

The invoices in Exhibit 21 establish that Intersource purchased "synthetic slag briquettes" consisting of a mix of magnesite (also listed as MGO or magnesium oxide on one invoice) and carbon or coal.  These are known as "magnesia carbon bricks" ("MCBs"), a distinct product in which magnesite is simply one component or raw material.[3]  Magnesite comes in "three principal forms":  dead burned magnesite ("DBM"), caustic calcined magnesite ("CCM") and electro-fused magnesite ("EFM").  SAC ¶¶ 51-53.  The SAC's conspiracy allegations (and the exhibits that supposedly buttress those allegations) refer only to the fixing of magnesite export prices and never once mention magnesia carbon bricks.  SAC ¶¶ 60-72.  A magnesia carbon brick is a product downstream from magnesite, and the purchase of a downstream product does not provide that purchaser with antitrust standing as a direct purchaser of the upstream component product.  *See, e.g.*, *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 91 (3d

---

[3]   The fact that Intersource's "representative" purchases concern a different product should be self-evident from the face of the invoices, which show that DBM and CCM are raw inputs into the bricks.  Nonetheless, the Court may take judicial notice of the fact that magnesite and magnesia carbon bricks are treated as "distinct" products from a report of the International Trade Commission.  *See* Pak Decl., Ex. 2 (*Certain Magnesia Carbon Bricks From China and Mexico*, Inv. Nos. 701-TA-468, 731-TA-1166-1167, USITC Pub. 4182 (Sept. 2010) (Final) at 5-6 (Views of the Commission), I-8, I-12 (Staff Report)).  Federal Rule of Evidence 201 permits judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," and the statements contained in the ITC ruling cannot reasonably be questioned.  *See Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 702 F. Supp. 2d 320, 401-02, 409-10 (D.N.J. 2010) (GEB) [hereinafter "*ASP I*"], *vacated on other grounds*, 654 F.3d 462 (3d Cir. 2011) (taking notice of related Commerce Dep't Int'l Trade Admin. ruling); *Mag Instrument, Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1106 & n.2 (C.D. Cal. 2008) (taking notice of Views of the Commission contained in ITC report).

Cir. 2011) ("[S]tanding lies with the direct purchaser and not any subsequent downstream purchaser."); *In re ATM Fee Antitrust Litig*., 686 F.3d 741, 750 (9th Cir. 2012) (where interchange fee paid by banks was fixed, customers who paid foreign ATM fee that incorporated interchange fees were indirect purchasers) *cert. denied sub nom. Brennan v. Concord EFS, Inc.*, 134 S. Ct. 257 (2013).  Thus, the SAC precludes any claim that Intersource has antitrust standing as a direct purchaser of magnesite.

Finally, the SAC refutes any notion that Intersource's alleged injury resulted from or was caused by the alleged conspiracy concerning *magnesite export prices*.  The SAC alleges the fixing of magnesite export prices only.  SAC ¶¶ 60-72, 75.  If, as it appears, the bricks purchased by Intersource were manufactured in China, then those bricks did not incorporate magnesite exported from China subject to the alleged export price conspiracy.  Rather, it appears the magnesite used in those bricks was sourced domestically in China, incorporated into magnesia carbon bricks in China, and then exported to Intersource.  Consequently, any injury alleged to have been suffered by Intersource for those purchases cannot be an injury in fact traceable to the complained-of conduct—a conspiracy regarding magnesite exports.  Thus, Intersource lacks Article III standing as well as antitrust standing.  *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 756-59 (1984) (finding injury alleged not fairly traceable to the Government conduct respondents challenged as unlawful).

### C.  Animal Science Has Failed To Allege Standing To Seek An Injunction

Plaintiff Animal Science, as a purported indirect purchaser of magnesite, seeks only injunctive relief under the federal antitrust laws.  To survive a motion to dismiss, Animal Science must allege facts plausibly indicating "(1) [a] threatened loss or injury cognizable in equity; (2) proximately resulting from the alleged antitrust violation."  *McCarthy v. Recordex*

9

*Serv., Inc.*, 80 F.3d 842, 856 (3d Cir. 1996).[4]  Animal Science has alleged neither, again.

> 1.     *Animal Science has not alleged a threat of imminent injury*

A plaintiff seeking injunctive relief must establish "a significant threat of injury

from an impending violation . . . or from a contemporary violation likely to continue or recur."

*Mid-West Paper Prods. Co. v. Cont'l Grp., Inc*., 596 F.2d 573, 591 (3d Cir. 1979) (citations and

internal quotation marks omitted).  This requirement of threatened injury "dovetails" with the

requirements of a live case or controversy required by Article III of the Constitution.  *In re New

Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 14 (1st Cir. 2008).  "Past exposure to

illegal conduct does not in itself show a present case or controversy regarding injunctive

relief . . . if unaccompanied by any continuing, present adverse effects."  *Id.* (*quoting O'Shea v.

Littleton*, 414 U.S. 488 495-96 (1974)) (internal quotation marks omitted).  "[A]llegations of

future injury [must] be particular and concrete."  *Steel Co*., 523 U.S. at 109 (*quoting O'Shea*, 414

U.S. at 496-97) (internal quotation marks omitted).

The SAC's naked assertions that the alleged cartel "continues its illegal conduct

today" and that Plaintiffs "will continue to be injured by Defendants' ongoing conduct," SAC

¶¶ 79, 87, fall well short of the required "particular and concrete" allegations of a "significant

threat of injury."  The SAC alleges no actual facts indicating that magnesite purchasers are

threatened today by any present or future injury from existing or imminent conduct (a point

made in previous briefing but not rectified in the SAC).  Indeed, the most recent conduct alleged

in the SAC occurred nearly *eight years ago*.  SAC ¶ 72.

---

[4]    The Court observed that antitrust plaintiffs seeking injunctive relief do not face all of the
antitrust standing concerns that antitrust plaintiffs seeking damages face.  *ASP II*, 2014 WL
3695329, at *21 n.8.  Nonetheless, there are constitutional and prudential requirements that
must be, yet have not been, met by Animal Science.

10

In *In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litigation* ("*Pipe Fittings*"), the Court dismissed an injunctive relief claim because the "most recent allegations" concerned events that occurred approximately three years before the complaint.  No. 12-169, 2013 WL 5503308, at *7 (D.N.J. Oct. 2, 2013).  The Court rejected allegations that "anticompetitive behavior is 'continuing to the present'" as "conclusory" and insufficient "to suggest ongoing violations" supportive of injunctive relief.  *Id.*  The SAC's nearly identical conclusory pleading means Animal Science has failed to satisfy the first requirement to state a claim for injunctive relief.[5]  Moreover, the lack of factual allegations of existing or even recent violations of the Sherman Act means Animal Science has failed to satisfy the redressability requirement for constitutional standing.  As the Supreme Court ruled in *Steel Company*, "[b]ecause respondent alleges only past infractions of EPCRA, and not a continuing violation or the likelihood of a future violation, injunctive relief will not redress its injury."[6] 523 U.S. at 109.

2.      *Animal Science has not alleged injury that is proximately caused by the alleged unlawful conduct in China*

When this Court discussed antitrust injury and causation in its last decision, it found that "the Complaint says almost nothing about the antitrust injury allegedly suffered by Animal Science."  *ASP II*, 2014 WL 3695329, at *20.  That observation is equally true of the SAC, which continues to lack the most basic factual allegations necessary to assess whether,

---

[5]   *See also New Motor Vehicles*, 522 F.3d at 14-15 (affirming dismissal of injunctive claim where alleged conduct occurred five years in the past and therefore no allegations of "prevailing conditions" that supported "any realistic current threat"); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 210-11 (S.D.N.Y. 2012) (dismissing injunction claim because "Plaintiffs' claim of future injury is wholly speculative").

[6]   Resco now is attempting to represent, along with Animal Science, the injunctive relief class.  SAC ¶ 39.  The failure to allege a threat of imminent injury is fatal to Resco's claim as well.

much less establish that, Animal Science's alleged injury flows from Defendants' anticompetitive activity.

First, there are no allegations concerning the actual products purchased by Animal Science.  The SAC alleges that Animal Science "has purchased magnesite in the form of magnesium oxide," which is a redundant statement because the term magnesite, as it has been used in this litigation, refers to magnesium oxide.[7]  Moreover, the SAC provides no information regarding the products actually purchased or where in the chain of distribution those purchases take place.  Consequently, the Court is left to speculate about what Animal Science has purchased (or will continue to purchase) and to what degree, if any, those purchases have been (or will be) effected by the alleged conspiracy.  For example, if Animal Science has purchased products containing trace amounts of magnesite, then it cannot be said that the alleged injury was proximately caused by the alleged antitrust violation.  *See In re Magnesium Oxide Antitrust Litig.*, No. 10-5943, 2012 WL 1150123, at *9 (D.N.J. Apr. 5, 2012) (purchases containing up to 4% of the allegedly price-fixed commodity were "too small to provide a sufficient nexus" between indirect purchasers and the conspiracy); *In re Dynamic Random Access Memory ("DRAM") Antitrust Litig.*, 516 F. Supp. 2d 1072, 1091-92 (N.D. Cal. 2007) (DRAM indirect purchasers failed to allege how their injury was traceable to unlawful conduct when DRAM is small portion of unspecified electronic devices).

Second, there are no allegations that the price of whatever products Animal Science has purchased have been (or will be) inflated.  The SAC alleges that "Chinese magnesite exporters continue to charge artificially inflated prices."  SAC ¶ 10.  Ignoring for the moment

---

[7]   *ASP I*, 702 F. Supp. 2d at 343 n.17 (stating that despite the use of the term magnesite, the Court understood Plaintiffs' allegations to concern magnesium oxide or magnesia).

that there is not a single factual allegation as to what Chinese magnesite exporters "continue" to do in the year 2014 when the SAC was filed, this allegation does not allege that the prices of *products purchased by Animal Science* are or will be inflated as a consequence.  An allegation that Animal Science is paying supra-competitive prices is a prerequisite to establishing that its injury is of the type the antitrust laws were intended to prevent.  And the failure to allege a connection between a price increase for an upstream commodity and the price of a downstream product translates into a failure to allege causation.[8]

Third, there are no allegations that the purchased magnesite came from Defendants.  The SAC alleges only that Animal Science "has continued to purchase magnesite from China."  SAC ¶ 10.  Because the SAC does not allege that the magnesite purchased by Animal Science came from (or will come from) Defendants, as opposed to non-Defendant sellers, there cannot be proximate injury from Defendants' unlawful acts.  *See Pipe Fittings*, 2013 WL 5503308, at *19-20 (dismissing individual plaintiffs who failed to allege purchases came from defendants and were affected by the alleged conspiracy); *Int'l Ass'n of Machinists and Aerospace Workers ("IAM") v. OPEC*, 477 F. Supp. 553, 574 (C.D. Cal. 1979) (no proximate cause where plaintiff failed to establish gasoline purchased came from defendants' oil), *aff'd*, 649 F.2d 1354 (9th Cir. 1981).  Indeed, even the allegation that Animal Science's magnesite came from China is a conclusory assertion. There are no factual allegations from which to conclude that Animal Science's magnesite originated in China rather than in any of the other countries (including the U.S.) that produce magnesite.  *See* SAC, Ex. 17 (Tables 2 and 7).

---

[8]   *See In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 940 (N.D. Ill. 2009) (dismissing indirect purchasers' injunction claim for failure to allege "a chain of causation between the alleged restraint in the market – an illicit agreement to fix the price of potash – and their injury – paying higher prices for potash-containing products, specifically, fertilizer"), *vacated on other grounds sub. nom. Minn- Chem, Inc. v. Agrium Inc.,* 657 F.3d 650 (7th ).

In sum, Animal Science's claim fails under Rule 12 because the Court would have to fill in the holes in pleading identified above with assumptions. Yet, as the Court already recognized, such assumptions cannot be made: "It is not, however, proper to assume that the [plaintiff] can prove facts that it has not alleged." *ASP II*, 2014 WL 3695329, at *10 (citation omitted).

## II.   ACTIONABLE DIRECT PURCHASER CLAIMS, IF ANY, MUST BE ARBITRATED IN CHINA

As Defendants showed and Plaintiffs did not dispute in prior motion practice, it is industry custom and practice to include a mandatory arbitration clause in Chinese magnesite sales contracts. *See generally* Dkt. Nos. 37, 53, 59, 133, 137, 140, 142. While Defendants' previous briefing addressed the question of arbitration in relation to the alleged purchases by Resco directly or through the assignment from Possehl (US), Defendants' arguments apply equally to the alleged direct purchases by Intersource and are incorporated herein.

Previously, the Court explained how "the existence and scope of arbitration agreements that may apply to this case remain murky" and that this is "a state of affairs for which Plaintiffs are primarily responsible." *ASP II*, 2014 WL 3695329, at *43. Thus, the Court instructed that if Plaintiffs decided to amend the FAC to "to include plausible, specific factual allegations of direct purchases," "such allegations [must] identify the relevant contracts and state whether such contracts contain arbitration clauses." *Id*. at *41. Plaintiffs' failure to satisfy the Court's directive further supports dismissal of the instant action in favor of arbitration in China.

First, as this Court previously found, Plaintiffs failed to provide evidence that the claims of Resco are not subject to arbitration in China. The same failure exists in the SAC. The SAC still alleges that "Possehl purchased magnesite and magnesite products directly from defendants" (SAC ¶ 13), but provides no contracts or invoices with terms and conditions

14

showing that there was no agreement to arbitrate.  Plaintiffs can only allege that "[e]vidence of Possehl's direct purchases are in the hands of the Defendants."  SAC ¶ 16.  But as Defendants have shown before, and Plaintiffs have not disputed, the evidence in Defendants' possession demonstrate that "Possehl (HK) as the direct purchaser of the magnesite has agreed to arbitrate in China its magnesite claims with the Chinese Defendants."  Dkt. Nos. 137 at 4; 35-6, 35-9.

Second, Plaintiffs' new allegations relating to purported direct purchases by Intersource similarly fail to provide the requisite sales agreements.  Plaintiffs provided four sales invoices rather than the complete sales contracts including the terms and conditions of those sales.  Indeed, Plaintiffs entirely ignored this Court's directive to "state whether such contracts contain arbitration clauses."  *ASP II*, 2014 WL 3695329, at *41.  Plaintiffs' deliberate silence in view of the Court's explicit directive not only demonstrates the absence of evidence in Plaintiffs' favor, but also strongly suggests the possible existence of evidence favoring Defendants.  Indeed, this silence cannot overcome the clear evidence that Defendants' transactions typically include agreements to arbitrate in China.  *See* Dkt. No. 37-1 at 5-6 (Memo of Seven Defs. In Supp. of Mot. to Compel Arbitration).

## III.   INTERSOURCE CANNOT SUBSTITUTE FOR RESCO

In dismissing the FAC, the Court granted Plaintiffs, and Resco in particular, leave to amend "to reframe their allegations" because "[i]t may be that Plaintiffs can plead facts sufficient to establish standing."  *ASP II*, 2014 WL 3695329, at *39-40.  The Court was also "inclined" to give Resco another opportunity so that it could "meaningfully assess the motion to compel arbitration."  *Id*. at *39.  What the Court did not grant leave to do is to add a new

Plaintiff and Class Representative.[9]  Nor has the Court considered in a separate subsequent motion from Plaintiffs a request for leave to amend the complaint to add a new Plaintiff.  And the Court has not received from the purported new Plaintiff itself a motion to intervene in the present litigation.  Nevertheless, Intersource appears in the SAC as a purported named Plaintiff and representative of the direct purchaser damages class.  Undoubtedly, its appearance is a consequence of Resco's failure to allege standing.  Yet, try as it might, Intersource cannot sneak into this case over nine years after it was commenced to pick up the baton dropped by Resco.

### A.     Plaintiff Resco May Not Amend The Complaint To Add Intersource

The standards under Rule 15 of the Federal Rules of Civil Procedure support denial of leave to amend to add a new Plaintiff under the present circumstances.  The Court has the discretion to deny amendment where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

First, there is no question that there is "undue delay" and have been "repeated failures to cure" Resco's deficient standing.  Resco has been on notice of its deficient standing at least since its standing was challenged initially by Defendants on February 5, 2008 (*see* Defs' Opp. to Pls' Mot. for Default Judgment, Dkt. No. 35 at 21-22), and there is no justification for the undue delay of nearly seven years in trying to address this deficiency.  In *In re Flash Memory*

---

[9]    The Court may deny the addition of a new party when leave to amend was granted only to reframe allegations.  *See Flanagan v. Allstate Ins. Co.*, No. 01 C 1541, 2007 WL 1381524, at *3 (N.D. Ill. May 3, 2007) (denying addition of defendant in part because leave to amend was granted to "make clear what damages plaintiffs" sought and not to add defendants).

*Antitrust Litigation*, the Court found undue delay when plaintiff waited 30 months after commencing suit to seek a new class representative even though the "fact that [plaintiff] never directly purchased any NAND flash memory from any of the Defendants should have been ascertained by his counsel prior to filing this action."  No. C 07-0086, 2010 WL 2465329, at *5 (N.D. Cal. June 10, 2010).  Likewise, here, Plaintiffs' counsel could have (and should have) ascertained long ago that neither Resco nor its purported assignor directly purchased magnesite from Defendants.  And at any time over the past seven years, leave to amend could have been sought.  Instead, Resco and Plaintiffs' counsel have repeatedly failed to attempt to address this deficiency, including when it last amended the complaint on March 30, 2009, and after Plaintiffs' counsel admitted on August 16, 2012, that they were not in possession of the contracts underlying Resco's purported claim.  *See* Letter from Leda Dunn Wettre, Dkt. No. 147.

Second, granting leave to add Intersource should be denied because it would be futile.  An amendment is futile if the amendment could not survive a motion to dismiss.  *See, e.g.*, *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 505 (W.D. Pa. 2012).  Because Intersource too has failed to allege standing to bring a claim, as discussed, *supra*, its addition as a new Plaintiff would be futile.  *See Cox v. Sherman Capital LLC*, No. 1:12-cv-01654, 2014 WL 4370680, at *4 (S.D. Ind. Sept. 3, 2014) (denying as futile the addition of new plaintiffs who could not themselves establish standing).

Finally, even if the factors under Rule 15 did not support denial of leave to amend, Resco's lack of standing deprives the Court of subject matter jurisdiction to entertain a motion to amend.  Numerous courts have concluded that a plaintiff "may not amend the complaint to substitute a new plaintiff in order to cure a lack of jurisdiction, because a plaintiff may not create jurisdiction by amendment when none exist."  3 Moore's Federal Practice

17

§ 15.14[3] (3d ed. 2014); *see also Arrow Drilling Co., Inc. v. Carpenter*, No. 2:02-CV-09097,

2003 WL 23100808, at *5 (E.D. Pa. Sept. 23, 2003), *aff'd*, 125 F. App'x 423 (3d Cir. 2005).[10]

No allegations or evidence exists to support Resco's standing (antitrust or constitutional) to

prosecute a claim for damages at the outset of this lawsuit.  Resco's standing has always been

premised on purchases from non-Defendants unconnected to the alleged conspiracy and an

assignment that is flawed on its face.  *ASP II*, 2014 WL 3695329, at *36-37.  Because Resco has

no (and likely never had) standing to maintain this action for damages, it has no standing to seek

leave to amend (had it sought to do so).

### B.      Intersource's Claim Is Barred By The Statute of Limitations

Even if Intersource was permitted to be added as a Plaintiff and had standing to

bring a claim, its claim would be barred by the four year statute of limitations.  *See* 15 U.S.C.

§ 15b.  The SAC contains no allegations of conspiratorial acts (or any acts) since 2007.  SAC

¶ 72.  With no overt act in furtherance of the conspiracy alleged within the last four years,

Intersource's claim would be barred.  *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530

F.3d 204, 218 (3d Cir. 2008) ("overt acts in furtherance of an illegal conspiracy" must be

"committed during the limitations period").  Presumably, Intersource would argue that the statute

of limitations was tolled by Resco's class action claim under the doctrine of class action or

*American Pipe* tolling, but that argument would fail under the circumstances.

A number of courts have rejected the application of class action tolling where the

original plaintiff and class representative lacked standing.  *See, e.g., In re Colonial Ltd. P'ship*

---

[10]    *See also Noonan v. Sempris, LLC*, No. C13-257, 2013 WL 5569468, at *4 (W.D. Wash. Oct. 9, 2013); *Evenchik v. Avis Rent A Car Sys., LLC*, No. 12-cv-61, 2013 WL 2301224, at *2 (S.D. Cal. May 24, 2013); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-1952, 2011 WL 6178891, at *6-8 (E.D. Mich. Dec. 12, 2011); *Flash Memory*, 2010 WL 2465329, at *3; *Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 115-17 (D.D.C. 1999).

*Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994).  This is because courts have recognized the potential for abuse from a rule that reflexively extends tolling in such situations because it would encourage the filing of class action suits by "nominal plaintiffs" made merely to extend the period in which to find a class representative with standing.  *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 378 (D. Mass. 1987); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1167 (C.D. Cal. 2010).  Denial of tolling has been found to be particularly appropriate where, as here, the deficiency in standing should have been obvious to a reasonably diligent party or counsel.  *See In re Puda Coal Sec. Litig.*, No. 11 Civ. 2598, 2013 WL 5493007, at *13 (S.D.N.Y. Oct. 1, 2013) (denying intervention where named plaintiff "obviously lacked standing"); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, No. 09-CV-01376, 2010 WL 4117477, at *5 (N.D. Cal. Oct. 19, 2010) (denying tolling where "[t]he original complaints did not allege that the named plaintiffs had any ownership interest" in the offerings).

        This case underscores the above concerns.  Resco's deficient standing has been obvious throughout the history of this litigation.  In fact, the original Complaint filed in 2005 does not even allege that Resco itself purchased any magnesite.[11]  And as noted, *supra*, Resco's standing was challenged explicitly by Defendants early on, and Plaintiffs knew years ago that they did not possess the contracts underlying Resco's claim.  It is only now, with Resco's claim on the verge of being dismissed with prejudice, that a new purported direct purchaser appears.  Moreover, Intersource's appearance occurs not through independent counsel, but rather, through Resco's counsel, who have been aware of Resco's weak claim to standing all along.  This is not a

---

[11]    There are only vague references to "magnesite and magnesite products purchased by plaintiffs" at the very end of the Complaint.  Compl. ¶¶ 60-61, Dkt. No. 1.  The proffered support for Resco's standing came years later in a declaration in support of the Motion for Default Judgment.  Cert. of Resco Prods., Inc. In Supp. of Mot. for Default J., Dkt. No. 28-5 (Dec. 14, 2007).

situation in which an absent class member seeks to protect its interests, but instead a situation in which counsel seeks to protect their investment.  Granting class action tolling to Intersource would reward counsel for their delay and failure to conduct adequate due diligence and would encourage the very abuse that has concerned courts (including this one).[12]

## IV.    THE SECOND AMENDED COMPLAINT FAILS TO SATISFY THE ELEMENTS OF THE FTAIA

The Court cautioned Plaintiffs that "conclusory allegations, like the ones in the [First] Amended Complaint" simply "will not do" to satisfy the exceptions to the FTAIA's general rule that the Sherman Act does not apply to trade or commerce with foreign nations. *ASP II*, 2014 WL 3695329, at *46.  Plaintiffs were put on notice that the Court would "require specific plausible allegations that are factual in nature" in an amended complaint.  *Id.* at *45. Yet, no such factual allegations are provided in the SAC.

### A.    The SAC Does Not Satisfy The "Import Exception"

The FTAIA places all "conduct involving trade or commerce . . . with foreign nations" beyond the reach of the Sherman Act unless one of two distinct exceptions apply.  15 U.S.C. § 6a.  The first exception, appearing in the FTAIA's opening clause, states that the Sherman Act may apply "if the defendants were involved in 'import trade or import commerce.'" *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 466 (3d Cir. 2011).  The Third Circuit re-affirmed that "the import trade or commerce exception 'must be given a relatively strict construction'" in order "[t]o give the latter [effects exception] meaning."  *Id.* at 470

---

[12]   In *Cal. Pub. Emps. Ret. Sys. v. The Chubb Corp.*, this Court expressed it was "sensitive to the potential for abuse," but found that interest to be "outweighed" by prejudice to unnamed class members in that instance and by the fact that the Third Circuit had permitted class action tolling in a previous context.  No. Civ. 00-4285, 2002 WL 33934282, at *29-30 (D.N.J. June 26, 2002).

(quoting *Carpet Grp. Int'l v. Oriental Rug Imp. Ass'n*, 227 F. 3d 62 (3d Cir. 2000)). This is because, as the Third Circuit explained in *Carpet Group*, "the FTAIA differentiates between conduct that involves [import] commerce, and conduct that directly, substantially, and foreseeably affects such commerce." *Carpet Group*, 227 F.3d at 72 (internal quotation marks omitted). Anything less than a strict construction would undermine the statute's *raison d'etre*.[13]

Even so, the Third Circuit concluded that the previous ruling in this case, which required Defendants to "function as the physical importers of goods" was too strict. 654 F.3d at 470. The Third Circuit reasoned that the import commerce exception could be satisfied by a defendant's foreign conduct that "target[s]" or is "directed at a U.S. import market." *Id*. at 471. The Third Circuit pointed to the facts of *Carpet Group*, which involved a scheme designed to ensure that only U.S. importers and not retailers could bring foreign-manufactured oriental rugs into the U.S. *Id*. at 470. It distinguished defendants' conduct in that scheme, which "targeted the U.S. import market in various ways," from the conduct in *Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293 (3d Cir. 2002), which "targeted a foreign market." *Id*.

Here, Plaintiffs, as they did in the FAC, sprinkled their pleading with unsupported allegations that Defendants "directly sold . . . to U.S. companies" and that the alleged cartel's price-fixing agreements "includ[ed] exports to the United States." *See, e.g.*, SAC ¶¶ 2, 21, 27, 59, 65, 66, 71. The Court has already found such allegations to be conclusory under *Twombly*

---

[13] Congress intended that most foreign commerce conduct be filtered through a "single objective test – the 'direct, substantial, and reasonably foreseeable effect' test." H.R. Rep. No. 97-686, *reprinted in* 1982 U.S.C.C.A.N. 2487 (1982). As the Supreme Court recognized, "Congress designed the FTAIA to clarify, perhaps to limit, but not to expand in any significant way, the Sherman Act's scope as applied to foreign commerce." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 169 (2004). Thus, interpretations of the FTAIA that avoid its effects test, such as through expansive use of the involving import commerce provision, would undermine the statute's purpose.

and insufficient on multiple occasions.  *ASP II*, 2014 WL 3695329, at *46 ("conclusory allegations, like ones in the Amended Complaint, that Defendants made direct sales to 'U.S. customers' . . . will not do"); *ASP I*, 702 F. Supp. 2d at 346-47 (finding current paragraph 59, among others, to be facially insufficient under *Iqbal/Twombly*).

The SAC contains no factual allegations that Defendants "targeted" or "directed" their alleged anticompetitive conduct at the U.S. import market.[14]  The SAC is noticeably silent on the actions of the Minmetals or Sinosteel defendants, and there is no pleading that they targeted the U.S. market with their allegedly unlawful conduct.  Nor are there factual allegations that the "cartel" more broadly directed its conduct at the U.S. import market.  The only allegations are the repeated conclusory assertions that the cartel's agreements "include[ed] exports to the United States."  Further supporting the conclusion that this is rote conclusory pleading is the fact that the sources supporting these allegations never characterize the agreements as directed at or applicable to the U.S. market.

The SAC also contains no factual allegations that Defendants directly sold magnesite to Resco or Intersource in the United States.  Even though they purport to represent the class of "U.S. companies" to which Defendants allegedly "directly sold" magnesite, they apparently cannot identify any direct sales of magnesite by Defendants.  After the opportunity to re-plead and nearly a decade to marshal the evidence, the SAC still fails to offer factual support for direct sales of magnesite by Defendants to Resco or Possehl (US).[15]  Likewise, the SAC fails

---

[14]  *See Kruman v. Christie's Int'l PLC*, 284 F.3d 384, 395 (2d Cir. 2002) (no import commerce exception because "[t]he plaintiffs did not describe conduct by the defendants that was directed at an import market."), *abrogated on other grounds by F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004).

[15]  When Plaintiffs claim that Defendants possess the evidence of Possehl's direct purchases, SAC ¶ 16, they are pointing to sales between certain Chinese Defendants and Possehl (HK).

to allege direct sales of magnesite by Defendants to Intersource.  In sum, there are no factual

allegations in the SAC that Defendants were "involved" in U.S. magnesite import commerce.[16]

### B.     The SAC Does Not Satisfy The "Effects Exception"

The second exception to the FTAIA requires that a defendant's conduct have (i)

"a direct, substantial and reasonably foreseeable effect" on U.S. domestic or import commerce;

and (ii) "such effect gives rise to a claim" under the Sherman Act.  15 U.S.C. § 6a.  The SAC

fails to sufficiently allege either requirement.

#### 1.     There are no allegations of a "direct, substantial and reasonably foreseeable effect" on U.S. commerce

All of the SAC's allegations attempting to address the FTAIA's effects exceptions

are "formulaic recitation[s]" of the elements of the exception.  *See* SAC ¶¶ 37, 59, 83-84.  These

allegations are not entitled to the presumption of truth.  *See ASP II*, 2014 WL 3695329, at *10;

*ASP I*, 702 F. Supp. 2d at 346-47 (finding current paragraph 59 to be "a mere mechanical

repetition of the elements" of the effects exception).  Other allegations that could be deemed

"factual" in nature are insufficient because they do not allege any actual effect—direct,

substantial or otherwise—on *U.S. commerce* from the alleged unlawful conduct *of Defendants*.

---

Such transactions between foreign sellers and foreign buyers are not conduct that involve U.S. import commerce.  *See Motorola Mobility LLC v. AU Optronics Corp*., No. 14-8003, 2014 WL 6678622, at *2 (7th Cir. Nov. 26, 2014) (sales by foreign LCD manufacturers to foreign phone manufacturers not "import commerce," even if those phones later arrived in the U.S.) (to be reported in F.3d).

[16]   Foreign conduct that does comport with the import commerce exception must nonetheless meet the requirements of *Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993), which governs the extraterritoriality of the Sherman Act.  *See Dee-K Enters., Inc. v. Heveafil Sdn. Bhd*., 299 F. 3d 281 (4th Cir. 2002).  The Sherman Act applies to a defendant's foreign conduct so long as it "was meant to produce and did in fact produce some substantial effect in the United States."  *Hartford Fire*, 509 U.S. at 796.  The SAC contains no factual allegations indicating *Defendants'* conduct produced a *substantial* effect in the U.S.

To illustrate, the SAC alleges agreements or meetings on general "export prices," yet never alleges whether or how those prices translated into higher prices for U.S. purchasers and the requisite impact on U.S. commerce.  SAC ¶¶ 65, 66, 70-72.  For example, in paragraph 70, the SAC alleges a "goal" to maintain DBM prices in a certain range, but does not allege that those prices were applicable to the U.S. market, were charged to any U.S. customers, or had a direct and substantial effect on US commerce.  *Id.* ¶ 70, Ex. 17.  Such allegations necessarily fail because they do not link the foreign conduct to an actual effect on U.S. commerce.  *See, e.g.*, *Eurim–Pharm GmbH v. Pfizer Inc.*, 593 F. Supp. 1102, 1106-07 (S.D.N.Y.1984) (dismissing complaint where "the link between defendants' conduct abroad and the price . . . in the United States is far from apparent"); *Commercial St. Express LLC v. Sara Lee Corp.*, No. 08 C 1179, 2008 WL 5377815 (N.D. Ill. Dec. 18, 2008) (dismissing complaint that did not allege any facts of an effect in U.S. of German price-fixing conduct).

Other allegations are equally insufficient because they do not allege an effect that is a "direct" result of *Defendants*' foreign conduct.  There is some disagreement among the courts concerning the meaning of a "direct" effect as used in the FTAIA.  Some, like the Ninth Circuit, have construed an effect to be direct "if it follows as an immediate consequence of defendant's activity."  *United States v. LSL Biotechnologies*, 379 F.3d 672, 680 (9th Cir. 2004). Others, like the Second and Seventh Circuits, have defined it to be a "reasonably proximate causal nexus" to defendants' conduct.  *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co*., 753 F.3d 395, 410-413 (2d Cir. 2014); *Minn-Chem, Inc. v. Agrium Inc*., 683 F.3d 845, 856-57 (7th Cir. 2012).  The Third Circuit has not weighed in, but this Court previously applied the Ninth's Circuit "immediate consequence" standard.  *ASP I*, 702 F. Supp. 2d at 337.  Under either construction of direct effect, however, the SAC's allegations are wanting because there are no

24

allegations linking an effect on U.S. commerce to Defendants' conduct.  For example, referencing a table of imports now in paragraph 56, this Court previously refused Plaintiffs' "invit[ation] . . . to equate all Chinese magnesite-based exports with Defendants' magnesium oxide exports."  *Id.* at 344-45.  Allegations about China generally cannot substitute for allegations about Defendants specifically.

Moreover, while in theory the effects of price-fixing may be felt downstream in the supply chain, such an effect by definition would be indirect or less substantial and may no longer be reasonably foreseeable.  This is significant for Animal Science because its claim is also dependent upon there being an effect which complies with the FTAIA.  As noted in Section I.C., the SAC's allegations regarding Animal Science's indirect purchases are wholly deficient.  Thus, they cannot support any claim of "direct" effects under the "immediate consequence" interpretation of direct effect. Even the more liberal "proximate causation" interpretation of direct effect "will depend on many factors, including the structure of the market and the nature of commercial relationships at each link of the causal chain."  *Lotes*, 753 F.3d at 413.  Without such allegations, as is the case here, the Court cannot determine if this is a "situation in which action in a foreign country filters through many layers and finally causes a few ripples in the United States."  *Motorola*, 2014 WL 6678622, at *3 (quoting *Minn-Chem*, 683 F.3d at 860).  Nor can it be assumed that the downstream effect on commerce is substantial.  The Seventh Circuit in *Motorola* explained how the effect of a price increase on a component can be "tiny" when viewed from the perspective of the downstream product into which the component is incorporated.  *Id.* at *5.

> 2.    *There are no allegations that an effect on U.S. commerce gave rise to Plaintiffs' claims*

As the Court emphasized in its prior ruling, it is not enough for there to be simply

an effect on commerce.  The FTAIA requires that any "domestic consequences of foreign conduct *give rise to the antitrust claim at issue*," meaning that the domestic effects "give rise to Plaintiffs' Sherman Act claim."  *ASP II*, 2014 WL 3695329, at *45.  In other words, the defendant-causing domestic effects must be the "proximate cause" of the plaintiff's injury.  *Id.*; *see also Lotes*, 753 F.3d at 414 (collecting cases).

Because Resco is admittedly unable to establish that there were any direct purchases by assignor Possehl (US), Resco asserts that "[e]vidence of Possehl's direct purchases are in the hands of Defendants."  SAC ¶ 16.  That evidence points to purchases by Possehl (HK).  Any injury arising from such purchases from Chinese Defendants occurred in Hong Kong and "*precedes* the domestic effect" in the casual chain rather than gives rise from a domestic effect.  *Lotes*, 753 F.3d at 398 (finding plaintiff's injury occurred in China and prior to any domestic effect).  Furthermore, "a foreign injury does not become a U.S. injury merely because a foreign party assigns its cause of action to a U.S. plaintiff."  *ASP II*, 2014 WL 3695329, at *45.  This principle was reaffirmed in *Motorola*, where Motorola's foreign subsidiaries directly purchased the price-fixed LCD panels from foreign manufacturers.  The Seventh Circuit held this created a foreign injury and that the U.S. parent "cannot impute to itself the harm suffered" abroad by the foreign subsidiaries.  *Motorola*, 2014 WL 6678622, at *6.  If Resco is indeed relying on purchases by Possehl (HK), then its injury does not arise from an effect on U.S. commerce.

The other allegations of purchases similarly fail to provide the necessary proximate causal nexus.  In the words of this Court, there must be "specific factual allegation[s] of a connection between *Defendants'* foreign anticompetitive conduct and, e.g., a purchase by a plaintiff."  *ASP II*, 2014 WL 3695329, at *46 (emphasis added).  However, purchases from Rongyuan, Yingkou, and Haicheng Xiyang, entities that are neither Defendants nor participants

in the alleged cartel, cannot provide that connection.  Similarly, Intersource's claim based on

purchases of Chinese-made magnesia carbon bricks is not arising from the alleged effect on

commerce caused by inflated magnesite export prices.  *See*, Section I.B., *supra*.  Finally, the

SAC's complete lack of allegations concerning Animal Science's purchases prevents one from

finding that its claim arose from or was proximately caused by an effect of the Defendants'

conspiracy on U.S. commerce.

## V.    PLAINTIFFS' FAILURE TO ALLEGE NON-GOVERNMENT COMPELLED CONDUCT AND PRICES SUPPORTS DISMISSAL

Plaintiffs' failure to follow the pleading directives of this Court's most recent

opinion concerning standing, arbitration and the FTAIA, is accompanied by their failure to

satisfy the Court's prior directives on re-pleading to avoid dismissal under the doctrine of foreign

sovereign compulsion ("FSC").  By way of background, Defendants had previously moved to

dismiss the FAC under the FSC doctrine[17] because the relevant magnesite export prices were

subject to minimum price levels compelled by the Chinese government.  Judge Brown's 2010

opinion found that "the Chinese government indeed compelled compliance with '*a*' minimum

price, which—in turn—means that Defendants' conduct prompted by *that particular* compulsion

warrants this Court's abstention" under FSC.  *ASP I*, 702 F. Supp. 2d at 462.  However, Judge

Brown allowed for the possibility that Defendants could have engaged in a private conspiracy to

set magnesite export prices above the Chinese government-compelled minimum price (the supra-

minimum price or "SMP"), which conduct may not be exempted by FSC.  Yet, he also

recognized that the FAC did not make such allegations of SMP.  *Id.* at 462-63.  Accordingly, the

Court ruled that "Plaintiffs will be allowed an opportunity to re-amend their pleadings" to allege

---

[17]    Judge Brown had ordered sequential motions to dismiss that began with subject matter jurisdiction and abstention doctrines.  *ASP I*, 702 F. Supp. 2d at 328.

"the facts of such named defendants' agreement(s) to sell their goods at SMP." *Id.* Judge Brown emphasized that "the Court will not accept re-amended pleadings failing to state the identities of the entities that entered into SMP agreements or to detail the facts/circumstances of the such SMP agreements, as well as the prices of these SMP agreements." *Id.* at 464 n.149.

Defendants respectfully submit that this prior ruling by Judge Brown regarding SMP and FSC remain law of the case notwithstanding that the decision was vacated and remanded on other grounds by the Court of Appeals, because "if an appellate court reviewed a trial court's decision, but did not address an issue that the trial court decided, the trial court's decision remains the law of the case." *Am. Hotel Int'l Grp. Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 378 (S.D.N.Y. 2009) (prior ruling on lack of contract consideration remained law of the case even though opinion's ruling on choice of law had been vacated and remanded), *aff'd*, 374 F. App'x 71 (2d Cir. 2010).

District courts have routinely applied the law of the case to prior rulings when a circuit court has imposed an intervening vacatur or reversal and remand when the prior ruling was unrelated to the reasons underlying the vacatur or reversal. For example, in *Daiichi Sankyo, Inc. v. Apotex, Inc.*, No. 030937, 2009 WL 1437815 (D.N.J. May 19, 2009), this Court (Judge Bassler) found that the plaintiff/patent holder Daiichi had not engaged in inequitable conduct before the PTO and that its patent was valid. On remand, this Court (Judge Wigenton) held that Judge Bassler's prior ruling on the lack of inequitable conduct was still law of the case, despite Federal Circuit's reversal of the validity ruling, and accordingly dismissed defendant Apotex's monopolization counterclaim based on the alleged inequitable conduct. *Id.* at *7-8.

Similarly, here, the reasoning behind the Third Circuit's vacatur of Judge Brown's opinion related wholly to whether the FTAIA governed a court's subject matter

28

jurisdiction and did not address the FSC issue.  And while "a district court on remand has the discretion to reconsider an issue that was not decided by the Court of Appeals, the law of the case doctrine counsels against doing so." *Am. Hotel*, 611 F. Supp. 2d at 379.  Because Plaintiffs have failed to amend their pleadings in the SAC regarding SMP, as instructed by this Court, the SAC should be dismissed under the law of the case doctrine and FSC.

## CONCLUSION

For the reasons explained above and in Defendants' prior submissions,[18] Defendants respectfully request that the Court dismiss Plaintiffs' Second Amended Complaint in its entirety with prejudice or, alternatively, compel arbitration in China and stay the federal court proceedings.

Dated:  January 20, 2015                                             Respectfully submitted,


**Skadden, Arps, Slate, Meagher & Flom LLP**

By:  _/s/ Shepard Goldfein_____
Shepard Goldfein
Thomas Pak
Sean M. Tepe
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Defendants China Minmetals Corporation, China National Minerals Co., Ltd.*

**Robinson, Wettre & Miller LLC**

By:  _/s/ Keith J. Miller_____
Keith J. Miller
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400

**Kramer Levin Naftalis & Frankel LLP**
Jonathan S. Caplan
Mark A. Baghdassarian
Geoffrey G. Hu
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9000

*Attorneys for Defendants Sinosteel Corporation, Sinosteel Trading Co., Liaoning Jiayi Metals & Minerals Co., Ltd.*

---

[18]   If this motion to dismiss is denied, Defendants China Minmetals Corp. and Sinosteel Corp. intend to renew their defense based on the Foreign Sovereign Immunities Act.