# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                          :

ANIMAL SCIENCE PRODUCTS, INC.,   :
et al.,                       :    Civil No. 2:05-cv-04376 (KM)
                          :

           Plaintiffs,    :
                          :

      - against -    :
                          :

CHINA MINMETALS CORPORATION,  :
et al.,                       :
                          :

         Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

**Skadden, Arps, Slate, Meagher & Flom LLP**

Shepard Goldfein
Thomas Pak
Sean M. Tepe
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Defendants China Minmetals Corporation, China National Minerals Co., Ltd.*

**Robinson, Wettre & Miller LLC**

Keith J. Miller
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400
kmiller@rwmlegal.com

**Kramer Levin Naftalis & Frankel LLP**

Jonathan S. Caplan
Mark A. Baghdassarian
Geoffrey G. Hu
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9000

*Attorneys for Defendants Sinosteel Corporation, Sinosteel Trading Co., Liaoning Jiayi Metals & Minerals Co., Ltd.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

I.   PLAINTIFFS' OPPOSITION CONFIRMS LACK OF STANDING ............1

    A.   Resco Products, Inc. ............................................................1

    B.   Intersource, Inc. ..................................................................4

    C.   Animal Science Products, Inc.. .............................................6

II.  ANY VALID CLAIMS MUST BE ARBITRATED IN CHINA ..................7

III. INTERSOURCE CANNOT BE ADDED AS A PLAINTIFF......................9

IV.  THE FTAIA BARS PLAINTIFFS' CLAIMS ............................................12

    A.   Plaintiffs Have Not Alleged Involvement in Import Commerce ........12

    B.   Plaintiffs Have Not Alleged Claims Arising From a Direct
        Effect on U.S. Commerce .................................................14

V.   DISMISSAL UNDER FOREIGN SOVEREIGN COMPULSION .............15

# TABLE OF AUTHORITIES

## CASES

*Allen v. Dairy Farmers of America, Inc.,*
   748 F. Supp. 2d 323 (D. Vt. 2010) ................................................................. 2

*American Pipe and Construction Co. v. Utah,*
   414 U.S. 538 (1974) ..................................................................................... 11

*Animal Science Prods., Inc. v. China Minmetals Corp.,*
   34 F. Supp. 3d 465 (D.N.J. 2014) .......................................................... *passim*

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................... 1, 4

*Cal. Pub. Emps. Ret. Sys. v. The Chubb Corp.,*
   No. Civ. 00-4285, 2002 WL 33934282 (D.N.J. June 26, 2002) ................... 12

*DeTore v. Local No. 245 of Jersey City Pub. Emp. Union,*
   511 F. Supp. 171 (D.N.J. 1981) ..................................................................... 3

*In re Ductile Iron Pipe Fittings Indirect Purchaser Litig.,*
   No. 12-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013) ................................... 7

*Fenerjian v. Nongshim Co. Ltd.,*
   No. 13-CV-04115, 2014 WL 5685562 (N.D. Cal. Nov. 4, 2014) ................. 13

*Ferrante v. Amgen, Inc.,*
   No. 13-07344, 2014 WL 1092555 (D.N.J. Mar. 18, 2014) ............................ 6

*General Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat,*
   289 F. 3d 434 (6th Cir. 2002) ......................................................................... 9

*Haas v. Pittsburgh National Bank,*
   627 F.2d 677 (3d Cir. 1980) .................................................................... 11, 12

*Illinois Brick Co. v. Illinois,*
   431 U.S. 720 (1977) ................................................................................ 1, 2, 5

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002) .........................................................................5, 6

*Mansourian v. Board of Regents*,
    2007 WL 841739 (E.D. Cal. Mar. 20, 2007)....................................................11

*Martinez v. Schwarzenegger*,
    2011 WL 4479058 (S.D. Cal. Sept. 26, 2011) .................................................10

*Minn-Chem, Inc. v. Agrium Inc.*,
    683 F.3d 845 (7th Cir. 2012) ...........................................................................13

*PaineWebber Inc. v. Faragalli*,
    61 F.3d 1063 (3d Cir. 1995) ..............................................................................9

*In re Processed Egg Prods. Antitrust Litig.*,
    No. 08–md–02002, 2012 WL 1443625 (E.D.Pa. Apr. 24, 2012) ....................1

*Standard Bent Glass Corp. v. Glassrobots Oy*,
    333 F.3d 440 (3d Cir. 2003), .............................................................................8

*In re Sugar Industry Antitrust Litig.*,
    579 F.2d 13 (3d Cir. 1978) ............................................................................5, 6

## I.      PLAINTIFFS' OPPOSITION CONFIRMS LACK OF STANDING

### A.      Resco Products, Inc.

Notwithstanding their failure to follow the Court's pleading instructions,[1] Plaintiffs maintain that Resco has standing based on alleged purchases from so-called non-defendant "co-conspirators" Rongyuan and Yingkou, by clarifying, for the first time, that the "co-conspirators" were *horizontal* conspirators and not vertical conspirators.  Using this clarification, Resco contends that it need not satisfy the Court's requirement that the co-conspirators be named in the Second Amended Complaint ("SAC") as defendants, as required by the "co-conspirator exception" to *Illinois Brick*.  As an initial matter, the need for Plaintiffs to devote several pages to clarify their complaint's allegations illustrates, by itself, the failure to satisfy the requisite pleading requirements of Rule 8 and *Twombly*.

The clarification also fails because the SAC itself, as shown by the redline comparison to the First Amended Complaint ("FAC") (Dkt. No. 176-2, Pak Decl., Ex. 1), still "contains no *facts*" as to Rongyuan's and Yingkou's participation in the alleged conspiracy and still relies only on the "epithet 'co-conspirator.'"[2]  Because no allegations connect either entity to the alleged

---

[1]  *Animal Science Prods., Inc. v. China Minmetals Corp*., 34 F. Supp. 3d 465, 507 (D.N.J. 2014) [hereinafter "*ASP II*"].

[2]  *See In re Processed Egg Prods. Antitrust Litig*., No. 08–md–02002, 2012 WL 1443625, at *5 & n.7 (E.D. Pa. Apr. 24, 2012) (dismissing Land O'Lakes

*(cont'd)*

conspiracy, Plaintiffs resort to two disingenuous arguments to contend that the

SAC "adequately alleges participation of co-conspirators in the conspiracy."

Plaintiffs' Opposition Brief ("Op.") at 8-9.

First, Plaintiffs attempt to support Resco's standing by noting that

"co-conspirators" Haicheng City Xiyang Import and Export Co. and Haicheng

Xiyang Refractories Materials Corp. have a connection to the conspiracy by being

subsidiaries of Xiyang Group, a founding member of the alleged conspiracy.[3]  Op.

at 9.  However, the SAC never alleges that Resco purchased magnesite from the

Xiyang entities (it only alleges purchases by Intersource of magnesia carbon

bricks) and, therefore, they cannot be the basis for Resco's direct purchaser

standing.  Second, Plaintiffs argue that the SAC specifically names "[n]umerous

Yingkou entities" as participants in the alleged cartel.  *Id*.  But it appears the only

thing "co-conspirator" Yingkou Sanhua Refractory Material Co. Ltd., which

allegedly sold magnesite to Resco, has in common with the purported "Yingkou"

_____

*(cont'd from previous page)*

because allegation of "active participation" in conspiracy was conclusory
assertion not supported by any facts); *Allen v. Dairy Farmers of Am.*, 748 F.
Supp. 2d 323, 344 n.16 (D. Vt. 2010) (declining to credit "stray statements"
alleging price-fixing with "co-conspirators" as conclusory).

[3]   After spending pages suggesting the alleged co-conspirators were horizontal
conspirators, Plaintiffs create more confusion by indicating the Haicheng
Xiyang entities might not be active co-conspirators after all but instead
subsidiaries of a conspirator, purchases from which would be subject to the
*Illinois Brick* "ownership and control exception."  Op. at 8.

cartel participants listed in SAC Exhibit 16 is the word Yingkou—which is a city in China.[4]  This equates to arguing that New York University and the New York Yankees are related entities because they both have New York in their names.

Plaintiffs also cannot justify standing based on direct purchases made by claims assignor Possehl, Inc. (or Possehl (US)) because they concede that Resco is unable to plead *any* facts of Possehl (US) purchases, as instructed by the Court.[5]  Plaintiffs try to excuse Resco's inability to comply with the Court's instruction because Possehl (US) is "no longer in existence."  This excuse fails.  The Assignment dated in June 2005, specifically gave Resco the right to "records documenting the producing seller to Resco of products covered by this Assignment."  Dkt. No. 133-2, Resco Decl., Exhibit 1.  It is troubling that Plaintiffs have for years maintained this suit while knowing that it never acquired the evidence of those purchases (despite repeated requests by Defendants that they submit contracts or purchase orders to the Court).  And now, Plaintiffs have the

---

[4]  *See* Yingkou, http://www.britannica.com/EBchecked/topic/653325/Yingkou (last visited Mar. 17, 2015); *see also DeTore v. Local No. 245 of Jersey City Pub. Emp. Union*, 511 F. Supp. 171, 173 (D.N.J. 1981) (taking judicial notice of the fact that Jersey City is a municipality of the State of New Jersey).

[5]  Resco again asserts misleadingly that "U.S. customs information documents sales of magnesite directly to Possehl Inc." Op. at 9-10.  As Defendants pointed out previously, those documents, which are outside the SAC, *inter alia*, are not Customs documents, do not show "sales" to Possehl (US), and list it as only a consignee, consistent with it acting as a broker.  Dkt. No. 157.

audacity to argue that their admittedly unsupported conclusory allegation of such purchases should be sufficient to justify discovery of Defendants (while ignoring that the Court has already rejected such action). *ASP II*, 34 F. Supp. 3d at 512, 516. Resco offers no legal support for its request and no factual basis, in the words of *Twombly*, to support a "reasonable expectation that discovery [of the Minmetals and Sinosteel Defendants] will reveal evidence" of standing.[6]

## B.     Intersource, Inc.

Plaintiffs' Opposition cannot genuinely dispute Defendants' prior showing that the product purchased by Intersouce—magnesia carbon brick ("MCB")—is not a product alleged in the SAC to have been price-fixed, but instead is a distinct product that simply incorporates magnesite as one of a number of raw materials. Defendants' Moving Brief ("Br.") at 7-9.

Rather than dispute this showing, Plaintiffs simply obfuscate with a number of baseless arguments. First, they re-name the products "magnesia bricks," misleadingly dropping "carbon" from the product's name. Op. at 11. Then, they argue that the SAC is not limited to a particular "form, such as brick" and instead includes all magnesite and "magnesite products." *Id.* But the differences are a matter of substance, not form. MCBs are a different product, not

---

[6]   Indeed, if Defendants had contracts with Possehl (US), those contracts would call for arbitration in China. *See* Part II.A., *infra*.

a brick "form" of solely magnesite.  And the SAC contains no allegations about

MCBs, but instead explicitly alleges a conspiracy to fix the export price of

magnesite (in the form of DBM, CCM or EFM).  Moreover, to the extent Plaintiffs

seek to exploit the SAC's occasional use of the vague term "magnesite products,"

it further highlights how the SAC fails under Rule 8 to provide reasonable notice

of the scope of Plaintiffs' claim.  (How many other products using magnesite as a

raw material do Plaintiffs wish to make the subject of their alleged conspiracy?)

Plaintiffs' reliance on two cases—*In re Sugar Industry Antitrust Litig.*

and *In re Linerboard Antitrust Litig.*—to argue that, even if MCBs were not the

price-fixed product itself, a plaintiff possesses direct purchaser standing if it

"purchases a finished product containing a price-fixed component directly from a

Defendant" or affiliate, is entirely misplaced.  Op. at 11.  In *Sugar*, the Court held

that the *Illinois Brick* doctrine did not bar the damages claim of hard candy

purchasing plaintiff  because the candy contained the refined sugar that was price-

fixed and the plaintiff bought directly from the alleged antitrust violator.  579 F.2d

13, 17-18 (3d Cir. 1978).  Similar facts and holding applied in *Linerboard*.  305

F.3d 145, 159-60 (3d Cir. 2002).

In contrast here, there are *no* allegations that the magnesite

incorporated into the MCBs purchased by Intersource was subject to price-fixing.

In fact, the SAC very clearly alleges a conspiracy to fix only the price of magnesite

for *export*, while the magnesite incorporated into the Chinese-produced MCBs would have been Chinese domestic magnesite.  Not only do the *Sugar* and *Linerboard* cases not apply, any injury allegedly suffered by Intersource is not traceable to the complained of conduct.  Therefore, Intersource lacks Article III standing.  Br. at 9.  Plaintiffs failed to address this argument in the Opposition brief, thereby conceding the issue.[7]

### C.   Animal Science Products, Inc.

Plaintiffs essentially concede that the pleading for Animal Science does not satisfy the requirements to plead a claim for injunctive relief—threat of injury and proximate causation.  Op. at 13-15.  Plaintiffs admit that there are no allegations in the SAC supporting a threat of present or future harm, but suggest that they should be excused from this requirement because "public information about the cartel . . . has disappeared."  Plaintiffs supply no precedent showing a lessened pleading standard for injunctive relief in subsequent complaints.[8]  In fact,

---

[7]   Plaintiffs waive their opposition to an argument by failing to respond to it.  *See, e.g.*, *Ferrante v. Amgen, Inc.*, No. 13-07344, 2014 WL 1092555, at *7 (D.N.J. Mar. 18, 2014).

[8]   Plaintiffs are also incorrect in stating that "Defendants contend that injunctive relief may not be ordered."  Op. at 14.  Under Federal Rule of Civil Procedure 54(c), the Court may order "the relief to which each party is entitled," including injunctive relief, if any Plaintiff is able to state a claim for relief and prevail at judgment.  However, since Animal Science brings an injunction claim only, Defendants contend it must satisfy the pleading requirements for such a claim.

precedent is to the contrary.  *See In re Ductile Iron Pipe Fittings Indirect Purchaser Litig.*, No. 12-169, 2013 WL 5503308, at *7 (D.N.J. Oct. 2, 2013) (dismissing second amended complaint for lack of ongoing violation allegations).

        For causation, Plaintiffs choose not to argue that Animal Science was proximately injured but instead argue that "[n]o court has required more specificity" than the SAC's allegation that China exports significant amounts of magnesite to the U.S. and "purchasers of animal feed such as Animal Science are a major sector of end users of magnesite."  Op. at 14.  That is plainly contradicted by the cases cited by Defendants, Br. at 11-13, which are not effectively rebutted by Plaintiffs.   In sum, even though the basic facts of what Animal Science purchased should be readily available and easily alleged, Animal Science and its counsel either cannot or will not provide this information.  Either way, its claim fails.[9]

## II.    ANY VALID CLAIMS MUST BE ARBITRATED IN CHINA

        Resco, through its failure to allege basic facts about its supposed direct purchases of magnesite, does not deny that it has failed to satisfy the Court's instruction to "identify the relevant contracts and state whether such contracts

---

[9]  Given the weakness of Animal Science's claim, Plaintiffs added Resco as a representative of the injunction class, SAC ¶ 39, and now suggest that Intersource also has standing.  Op. at 14.  Their failure to allege their purchases or to connect any purchases to Defendants' alleged unlawful conduct means both Resco and Intersource would not be able to satisfy the causation element.

contain arbitration clauses." *ASP II*, 34 F. Supp. 3d at 517.  Nor do Plaintiffs argue

that the Court erred in requiring plausible allegations of purchases and the terms of

those purchases in order to address the issues of standing and arbitration.

Plaintiffs' only response is to shift its burden to Defendants and say "any such

evidence 'is in the hands of the Defendants.'"  Op. at 17.  Yet, there is no basis to

believe discovery of Defendants would undermine the arbitration motion.

      First, as Defendants have repeatedly explained, the evidence in the

record shows sales from certain named Defendants to Possehl (HK) that contain

agreements to arbitrate in China.  Br. at 15.  Indeed, the Court found that

"Defendants have made a suggestive demonstration that certain related agreements

did contain [arbitration] clauses." *ASP II*, 34 F. Supp. 3d at 475.  Second,

Defendants have provided unchallenged declarations to show that it is industry

custom and practice to include a mandatory arbitration clause in Chinese magnesite

sales contracts.[10]  Under the circumstances, the Court may compel a party to

arbitrate in accordance with industry custom.[11]

      Plaintiffs also incorrectly contend that Defendants waived any right to

---

[10]  *See* Dkt. Nos. 35-1 at ¶14; 35-4 at ¶10; 35-7 at ¶12; 35-10 at ¶12; 36-1 at ¶12.

[11]  *See* Dkt. No. 142 at 1-3; *see also Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 448 (3d Cir. 2003) (finding no surprise or hardship about incorporating the merchant's standard arbitration agreement because, *inter alia*, the arbitration agreement was undisputedly the standard in the industry).

demand arbitration.  Op. at 18.  Consistent with the strong preference for arbitration, "waiver 'is not to be lightly inferred,' and waiver will normally be found only 'where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'"  *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995) (citations omitted).

Plaintiffs premise their waiver argument on Defendants' purported failure to move to compel arbitration immediately after having "notice" of the original complaint.  However, Plaintiffs had never effected proper service on Defendants, which triggers the obligation to respond.  *See* Dkt. No. 35 at 3, 10-11. And the Third Circuit has rejected the idea that waiver can be supported by so-called "notice."  *See PaineWebber*, 61 F.3d at 1069 (no waiver of arbitration from notice of a Pennsylvania Writ of Summons and draft complaint).[12]  Defendants moved for arbitration the same day they appeared to oppose Plaintiffs' motion for a default judgment; hence, no delay in Defendants' arbitration demand.  Dkt. No. 37.

## III.   INTERSOURCE CANNOT BE ADDED AS A PLAINTIFF

Plaintiffs argue that the Court's July 24, 2014 Order granted leave to

---

[12]  Plaintiffs' reliance on the Sixth Circuit *General Star* case is misplaced.  Op. at 19 (citing *General Star Nat'l Ins. Co. v. Administratia Asigurarilor De Stat*, 289 F. 3d 434 (6th Cir. 2002)).  The court found that defendant there "received proper service of process" and then "for 17 months, [] remained idle."  *Id.* at 438.  The defendant also waited more than one year from the entry of a default judgment to compel arbitration.  *Id.* at 436-37.

add Intersource as a new Plaintiff.  No such authorization appears in the Court's Order, either explicitly or implicitly.  Although Defendants defer to the Court's interpretation of the scope of its Order, Defendants respectfully submit that the Order only granted leave to Resco and Animal Science to fix their deficient allegations, not to add new parties.  For example, the Order states: "I am inclined to give *Plaintiffs* the opportunity to reframe *their* allegations."  *ASP II*, 34 F. Supp. 3d at 516 (emphases added).  Because Intersource was not a Plaintiff and had no allegations in the FAC to "reframe," the Order was not directed to it.

Regardless, Plaintiffs do not dispute that the Court has the discretion to deny an amendment for any one of a variety of reasons.  Br. at 16.  One basis for denying the addition of Intersource is "futility."  Because Intersource does not have standing, amending the SAC to add it as a new Plaintiff would be futile.  *See* Section I.B., *supra*; *see also* Br. at 17.

Additionally, the Court has discretion to deny an amendment for "undue delay."  Plaintiffs argue there was no undue delay because the Court had not dismissed Resco's claim on standing grounds until July 2014.  Undue delay, however, is assessed based not on when a court makes a ruling, but instead on what the plaintiff (or its counsel) knew and when.[13]  Defendants already outlined how it

---

[13]  *See, e.g., Martinez v. Schwarzenegger*, No. 08cv0565, 2011 WL 4479058, at *2 (S.D. Cal. Sept. 26, 2011) (denying for delay an amendment "on a basis known

*(cont'd)*

challenged Resco's standing from the beginning.  Br. at 4.  In any event, Resco and

its counsel had knowledge of what evidence of standing they possessed and when.

They either did or did not have the contracts or transaction documents when they

filed the original and subsequent complaints.  As the Court observed, the facts

necessary to support standing "are within the control of Plaintiffs, or could have

been obtained long ago."  *ASP II*, 34 F. Supp. at 516.  The failure to address this

deficiency until now is the epitome of undue delay.

Furthermore, Intersource's claim is barred by the running of the four

year statute of limitations.  Br. at 18.  Plaintiffs counter that, under the *American

Pipe* or class action tolling doctrine, Resco's original complaint tolled the statute of

limitations for "all purported members of the class," including Intersource.[14]  Op.

at 23.  Plaintiffs note that the Third Circuit in *Haas v. Pittsburgh Nat. Bank* applied

the tolling doctrine even where the original plaintiff lacked standing.

But Plaintiffs' argument fails to address Defendants' primary point—a

number of courts have rejected the extension of class action tolling in

circumstances where, like here, doing so would foster an abuse of the doctrine.

_____
*(cont'd from previous page)*
to Plaintiff since this litigation began"); *Mansourian v. Board of Regents*, No.
03-2591, 2007 WL 841739, at *3 (E.D. Cal. Mar. 20, 2007) ("plaintiffs were on
notice" and failed to demonstrate diligence in seeking amendment).

[14]  Since Intersource is not a class member because its purchase of MCBs places
them outside the class of magnesite purchasers, it is not entitled to tolling.

The Third Circuit's decision in *Haas* does not prevent this Court from denying

tolling under the particular factual circumstances of this case, which are not in

dispute.  *See* Br. at 19.  Indeed, this Court had extended tolling in the *Chubb*

decision cited by Plaintiffs only because it determined that the "potential for

abuse" was "outweighed" in that instance.  *Cal. Pub. Emps. Ret. Sys. v. The Chubb*

*Corp.*, No. Civ. 00-4285, 2002 WL 33934282, at *29-30 (D.N.J. June 26, 2002).

In this case, where Resco's deficient standing was known long ago, Intersource

shares the same counsel as Resco, and Intersource did not even purchase the

product at issue in the SAC, the scales tip in the opposite direction against tolling.[15]

## IV.  THE FTAIA BARS PLAINTIFFS' CLAIMS

### A.  Plaintiffs Have Not Alleged Involvement in Import Commerce

Plaintiffs do not dispute the Third Circuit's clear guidance that the

Court need only "give weight to any well-pled allegations" of Defendants' direct

sales to the United States.  Op. at 27-28 (quoting *ASP II*, 34 F. Supp. 3d at 471

n.11).  The SAC paragraphs cited by Plaintiffs, though, demonstrate how the SAC

does not contain any well-pled factual allegations that Defendants' conduct was

---

[15]  Lastly, Plaintiffs argue that even if the statute of limitations has run,
Intersource's claim "relates back" to the date of the original complaint pursuant
to Federal Rule of Civil Procedure 15(c).  However, Intersource's claim, based
on a purchase of *MCBs* incorporating domestic Chinese magnesite, does not
relate back because it could not have arisen from the same conduct alleged in
the original complaint, price-fixing of *magnesite* for export.

directed at the U.S. import market.[16]

   First, the SAC simply repeats the exact same conclusory pleading, already rejected by this Court as insufficient, that the various Defendants "directly sold magnesite products to U.S. companies." Op. at 28; *ASP II*, 34 F. Supp. 3d at 524. There are no facts, just naked assertions. The danger in relying on such unsubstantiated pleading is underscored by the failure of Resco, the original putative direct purchaser class representative, to plead its own direct purchases from Defendants. Second, contrary to the suggestion that the SAC alleges "the price of products sold in the United States," the SAC makes allegations concerning only general Chinese export prices unconnected to any U.S. sales or prices. Op. at 28, citing SAC ¶ 60-79. Third, contrary to the assertion that the SAC offers records that "Defendants made substantial sales" to U.S. companies, the cited paragraphs in the SAC only offer statistics about aggregate imports from China only. *Id*., citing SAC ¶ 55-57. Where the Third Circuit has stated that the import

---

[16] The barebones pleading in the SAC is in stark contrast to the allegations in *Minn-Chem, Inc. v. Agrium Inc*., where the five defendants in the highly concentrated potash industry were "responsible for the lion's share" of the 85% of imported U.S. potash consumption, U.S. plaintiffs "purchased potash directly," and foreign prices were used as "benchmarks for sales to U.S. customers" at higher U.S. prices. 683 F.3d 845, 849, 855 (7th Cir. 2012). Likewise, in *Fenerjian v. Nongshim Co. Ltd*., defendants' involvement in import commerce was not in serious dispute because the defendants themselves, along with U.S. subsidiaries, imported the noodles that were allegedly price-fixed and Plaintiffs also supplied charts reflecting price increases in the U.S. No. 13-CV-04115, 2014 WL 5685562, at *3-5 (N.D. Cal. Nov. 4, 2014).

commerce exception must be strictly construed, a complaint must offer more than

conclusory statements that are undermined by the class representative and

generalized pleading about exports from China rather than from Defendants.

**B.    Plaintiffs Have Not Alleged Claims Arising From a Direct Effect on U.S. Commerce**

Plaintiffs' Opposition fails to rebut Defendants' demonstration that

the SAC lacks non-conclusory, factual allegations that *Defendants' conduct* had a

"direct, substantial and reasonably foreseeable effect" on *U.S. commerce* that gave

rise to *Plaintiffs' claims*.  Br. at 23-27.

Plaintiffs argue that the first prong of the effects exception can be

satisfied by the mere "allegation that a price-fixing conspiracy caused U.S.

companies to pay supra-competitive prices."  Op. at 29-30.  Even if that were true,

the SAC still contains no factual allegations of U.S. prices, supra-competitive or

otherwise.  Plaintiffs cannot repeatedly use the conclusory phrase "including

exports to the United States" to turn allegations of generalized Chinese export

prices into a plausible factual allegation that Defendants "deliberately targeted U.S.

consumers."  Likewise, Plaintiffs cannot claim that an untested regression analysis

by their default judgment damages expert establishes how "Defendants' conduct

translated into higher U.S. prices" when, in fact, that expert admitted that the

analysis examined neither Defendants' pricing nor U.S. magnesite import prices.

*Compare* Op. at 32 *with* Dkt. No. 28-6 (Ex. A, Expert Report) at ¶ 23.

Plaintiffs also fail to satisfy the second prong of the FTAIA's effects exception.  Consistent with the requirement of the second prong that Defendants' "foreign anticompetitive conduct must have domestic effects that give rise to *Plaintiffs' Sherman Act claim*," this Court sought in an amended pleading "a specific factual allegation of a connection between Defendants' foreign anticompetitive conduct and, e.g., a purchase by a plaintiff."  *ASP II*, 34 F. Supp. 3d at 524 (emphases added).  The SAC does not offer that connection.  Instead, the best Plaintiffs can argue is that the U.S. gets a significant portion of its magnesite from China (not limited to Defendants) and Defendants allegedly "dominate[]" the international market (not the U.S. market) for magnesite and "magnesite products" (thereby including products not at issue).  Tellingly absent from that argument is any mention of Plaintiffs' purchases or injuries.  This silence concedes that Plaintiffs have no claims arising from a domestic effect of Defendants' conduct.

## V.     DISMISSAL UNDER FOREIGN SOVEREIGN COMPULSION

Plaintiffs offer no basis for claiming Judge Brown's foreign sovereign compulsion ruling was "clearly erroneous," such that it should no longer be treated as law of the case, other than the fact that it contradicted a few sentences in the FAC.  Op. at 35.  Furthermore, Plaintiffs offer no legal support for it being "clearly erroneous."  Thus, Plaintiffs' failure to distinguish its alleged conspiracy from the government compelled price-setting provides another avenue to dismiss the SAC.

15

Dated:  March 20, 2015                    Respectfully submitted,


**Skadden, Arps, Slate, Meagher & Flom LLP**

By:  */s/ Shepard Goldfein*

Shepard Goldfein
Thomas Pak
Sean M. Tepe
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Defendants China Minmetals Corporation, China National Minerals Co., Ltd.*

**Robinson, Wettre & Miller LLC**

By:  */s/ Keith J. Miller*

Keith J. Miller
One Newark Center, 19th Floor
Newark, New Jersey 07102
(973) 690-5400
kmiller@rwmlegal.com

**Kramer Levin Naftalis & Frankel LLP**

Jonathan S. Caplan
Mark A. Baghdassarian
Geoffrey G. Hu
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9000

*Attorneys for Defendants Sinosteel Corporation, Sinosteel Trading Co., Liaoning Jiayi Metals & Minerals Co., Ltd.*

16

## CERTIFICATE OF SERVICE

I, Keith J. Miller, certify that on March 20, 2015, I caused a true and correct copy of the Reply Memorandum in Support of Defendants' Motion to Dismiss the Second Amended Class Action Complaint with the Clerk of Court for the United States District Court of New Jersey by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

 */s/ Keith J. Miller*
Keith J. Miller